SLEEPY CREEK CLUB, INC., ANDREW R. WADDELL AND WIFE, JACQUELINE M. WADDELL v. WILLARD E. LAWRENCE AND WIFE, ELIZABETH F. LAWRENCE, MARION C. SEDBERRY AND WIFE, LOUISE F. SEDBERRY, WIL-MAR ESTATES, INC.

No. 768SC10

(Filed 2 June 1976)

Deeds § 20— restrictive covenants — no uniform plan — unenforceability by other owners

Restrictive covenants in a deed to a subdivision lot could not be enforced by the owners of other lots in the subdivision where the cov-

enants placed in the deed by the grantor were not a part of any uniform plan of development by the original developer, and the deed contained no provision that other property owners in the subdivision should have the right to sue to enforce the restrictions.

APPEAL by plaintiffs from *Peel, Judge.* Judgment entered 8 December 1975 in Superior Court, WAYNE County. Heard in the Court of Appeals 14 April 1976.

This is an action to enjoin the violation of restrictive covenants contained in a deed from defendants Sedberry to defendants Lawrence. The case was tried by the court without a jury.

No exceptions were taken to the court's findings of fact. Those findings, in material part, are as follows:

"6. Plaintiff Sleepy Creek Club, Inc (formerly Sleepy Creek Hunting & Fishing Club) was the developer of a tract of land in Wayne County, NC, said tract being shown on a plat . . . dated August 25, 1958. . . . This plat is entitled 'Property of Sleepy Creek Hunting & Fishing Club' and said tract of land [henceforth referred to as Original Sleepy Creek Subdivision] consists of eighty-five lots, all originally owned by Sleepy Creek Hunting & Fishing Club (now Sleepy Creek Club, Inc, plaintiff in this action). Said lots are located on the north and south shores of a 51-acre lake presently owned by Sleepy Creek Club, Inc as shown on Exhibit B attached hereto.

7. Plaintiff Sleepy Creek Club, Inc is the present developer of a tract of land in Wayne County, NC lying adjacent to the Original Sleepy Creek Subdivision, said tract being shown on a map . . . dated June 6 . . . Said tract of land [henceforth called New Sleepy Creek Subdivision] consists of 26 lots, all owned, at the time of the filing of this action, by Sleepy Creek Club, Inc.

8. Between August 25, 1958 and December 1, 1969, Sleepy Creek Hunting & Fishing Club and its successor, Sleepy Creek Club, Inc. sold eighty or more lots in the Original Sleepy Creek Subdivision, being the owner of five or less lots in said subdivision on December 1, 1969.

9. On December 1, 1969, Sleepy Creek Club, Inc at a special called meeting of the membership . . . adopted a resolution requiring that before approval of membership in the Club after December 1, 1969, said Club would require

that future deeds transferring title to lots in the Original Sleepy Creek Subdivision would contain restrictive covenants as follows:

'No member shall construct, erect or allow to be placed on his lot or on the Club's property in front of his lot, any trailer, house trailer, tent, shack, garage, barn or other out-building to be used as a residence, either temporarily or permanently. . . . '

The intent of the majority voting at said meeting was that the restrictions inserted in subsequent deeds pursuant to said resolution be enforceable as against owners of the restricted lots by Sleepy Creek Club, Inc and other lot owners whose property was similarly restricted.

10. The deeds tendered to purchasers of lots in the Original Sleepy Creek Subdivision by Sleepy Creek Hunting & Fishing Club and its successor Sleepy Creek Club, Inc during the period of August 25, 1958 to December 1, 1969, contain no restrictions identical or similar to those restrictions enumerated in the resolution of December 1, 1969. However, each of said deeds did contain a provision granting Sleepy Creek Hunting & Fishing Club the first right of refusal, or the right to repurchase, in the event that the grantee elected to sell his property in the future. Said right to repurchase would be at the option of the Club and would be at a price that the grantee had intended his prospective buyer to pay.

11. On or about April 19, 1969, Eldridge A. Williams and wife, Sally E. Williams conveyed Lot # 46 in Original Sleepy Creek Subdivision to Marion C. Sedberry and wife, Louise F. Sedberry, defendants in this action. This deed . . . contains no restrictions identical or similar to those restrictions enumerated in the resolution of December 1, 1969.

12. Said Lot # 46 was owned August 28, 1958, by plaintiff Sleepy Creek Club, Inc and the deeds in the chain of transfer from Sleepy Creek Club to Eldridge A. Williams and Sally E. Williams contain no restrictions identical or similar to those restrictions enumerated in the resolution of December 1, 1969.

13. On or about January 24, 1973, defendants Marion C. Sedberry and wife, Louise F. Sedberry conveyed Lot

# 46 . . . to Willard E. Lawrence and wife, Elizabeth F. Lawrence, defendants in this action and the present owners of said Lot # 46. This deed . . . contains restrictions identical to those enumerated in the resolution of December 1, 1969, which were inserted in the deeds pursuant to the rules of Sleepy Creek Club, Inc.

14. On or about March 18, 1974, Jarvis M. Garris and wife, Joyce W. Garris conveyed Lot # 45 in Original Sleepy Creek Subdivision to Andrew R. Waddell and wife, Jacqueline M. Waddell, plaintiffs in this action and the present owners of said Lot # 45. This deed . . . contains restrictions identical to those enumerated in the resolution of December 1, 1969.

15. At the time of the filing of the Complaint, thirty-five of the lots in the Original Sleepy Creek Subdivision contained restrictive covenants identical to those enumerated in the resolution of December 1, 1969, in their respective chains of title. Fifty-three of the lots in the Original Sleepy Creek Subdivision, as of the date of the filing of the Complaint, contained no restrictions identical or similar to those restrictions enumerated in the resolution of December 1, 1969, in their respective chains of title. Attached is a map of said Subdivision labeled Exhibit B, which is hereby made a part of these findings and on which map the lots which are restricted similarly to the Lawrence lot are shown as shaded and the lots which have not been similarly restricted are shown as not shaded. This attached map fairly and accurately portrays the locations of lots similarly restricted in relation to the lots not similarly restricted.

16. After December 1, 1969, and prior to any date that restrictive covenants identical to those enumerated in the resolution of December 1, 1969, appeared in the chains of title of Lots # 27, # 47, # 54, # 65, # 73, and # 75, deeds were recorded in the chain of title of said lots transferring interests of owners in said lots, which deeds did not contain restrictions identical or similar to the restrictions enumerated in the resolution of December 1, 1969. At various times subsequent to the appearance of said deeds in said chains of title of said Lots, Lots # 27, # 37, # 65, and # 75 have been made the subject of restrictions identical to those restrictions enumerated in the resolution of December 1, 1969. At the date of the filing of the Com-

plaint, Lots # 27, # 54, and # 73 contain no restrictions identical or similar to those enumerated in the resolution of December 1, 1969, in their respective chains of title.

17. The restrictions appearing in the chains of title of the thirty-five lots of the Original Sleepy Creek Subdivision which are encumbered with the restrictions identical to those enumerated in the resolution of December 1, 1969, appear in the public record as follows: Five lots becoming so encumbered in 1970, nine in 1971, four in 1972, four in 1973, nine in 1974, and four in 1975.

18. The resolution of December 1, 1969, and the restrictions enumerated therein do not appear in the public records of Wayne County except where the restrictions are specifically incorporated in the individual chains of title.

19. Defendants Marion C. Sedberry and wife, Louise F. Sedberry, grantors of defendants Willard E. Lawrence and wife, Elizabeth F. Lawrence, are not attempting in this lawsuit to enforce the restriction contained in the deed to the Lawrences for Lot # 46 of the Original Sleepy Creek Subdivision.

20. On or about the 16th day of July, 1975, certain persons acting for or on behalf of the defendants, Willard E. Lawrence and wife, Elizabeth F. Lawrence and Wil-Mar Estates, Inc commenced to move and erect a structure on said Lot # 46 of Original Sleepy Creek Subdivision, which structure is hereinafter referred to as 'structure'.

* * *

30. If the defendants, Willard E. Lawrence and wife, Elizabeth F. Lawrence are allowed to place said structure, previously described, on Lot # 46 of the Original Sleepy Creek Subdivision, then the plaintiffs Andrew R. Waddell and wife, Jacqueline M. Waddell and Sleepy Creek Club, Inc will suffer a continuous and recurring injury in that the property values in the Original Sleepy Creek Subdivision will be substantially decreased. However, the Court further finds that in view of its other findings of fact and conclusions of law, this finding is not pertinent to the decision."

On the foregoing findings of fact, the court made the following conclusions of law:

"1. That the Gemini structure is a double-wide mobile home. . . .

2. That a double-wide mobile home is a house trailer or a trailer within the meaning of the restrictions. . . .

3. That the placing of the Gemini double-wide mobile home on said Lot No. 46 would violate the terms of the restrictive covenant or the restrictions embodied in the resolution of December 1, 1969, as described in Finding of Fact No. 9, if said restrictions were enforceable against Willard E. Lawrence and wife, Elizabeth F. Lawrence in this cause of action.

4. That the lots in the Original Sleepy Creek Subdivision were not restricted pursuant to an original, general plan of development or to a general plan of development adopted for the use and benefit of all the owners of lots in the subdivision; that said restrictions are not enforceable *inter se*.

5. That neither Sleepy Creek Club, Inc nor plaintiffs Andrew R. Waddell and wife, Jacqueline M. Waddell are entitled to enforce the restrictions contained in the deed from Sedberry and wife to Lawrence and wife as third party beneficiaries.

6. That Plaintiffs Sleepy Creek Club, Inc, and Andrew R. Waddell and wife, Jacqueline M. Waddell, are not entitled to seek relief against the named defendants and the enforcement of said restrictions in this cause of action."

The court then entered judgment dismissing the action and plaintiffs appealed.

*Kornegay, Bruce & Rice, P.A., by R. Michael Bruce, for plaintiff appellants.*

*John W. Dees, for defendant appellees.*

VAUGHN, Judge.

The Lawrences' grantors (Sedberrys) placed the restrictive covenant in the deed. The restriction had not been in the chain

of title prior to the conveyance to the Lawrences. The servitude imposed by the restrictive covenant is a species of incorporeal right. When the Sedberrys impressed the servitude created by the restrictive covenants they thereby conveyed less than an unencumbered fee. A negative easement is a vested property right. The Sedberrys do not seek to enforce that right. The action is by plaintiffs who are strangers to the contract of conveyance.

We start with the well established proposition that since restrictive covenants are in derogation of the free and unfettered use of land, covenants imposing them are to be strictly construed against limitations on use. The same principle, we believe, should be observed when attempting to determine who may enforce the restrictive covenant.

The courts have indicated that for a covenant to be enforceable by a stranger, it must be shown to have been impressed for his benefit. Plaintiffs rely heavily on *Lamica v. Gerdes,* 270 N.C. 85, 153 S.E. 2d 814. In *Lamica,* the grantor expressly provided in the deed that other property owners in the subdivision should have the right to sue to enforce the restrictive covenant. The provision was obviously acceptable to the grantee and the consequent sale by deed, including the provision was, therefore, an express contract made for the benefit of third parties. The court simply enforced the contract of the parties. If the Lawrences and Sedberrys had desired to make a similar contract for the benefit of plaintiffs and others, they could have put the provisions in this deed and a similar result could have been obtained. They did not do so.

Neither can plaintiffs benefit from those cases holding that where a tract was originally sold under a uniform plan of development requiring the covenants to be placed in all deeds, it may be shown that the covenants were inserted for the benefit of all owners within the development and that they are enforceable *inter se.* Here, the covenants were not a part of any uniform plan of development by the original developer. They were, for the first time, inserted in the chain of title by the Sedberrys. Even now there is no uniform scheme of development (or redevelopment) of the subdivision.

The trial court concluded that plaintiffs cannot enforce the covenant found in the deed from the Sedberrys to the Lawrences. We hold that that decision was proper. It is not necessary,

therefore, for us to pass upon defendants' cross exceptions to the court's conclusion that the structure on the lot is a "house trailer" within the meaning of the restrictions.

The judgment dismissing the action is affirmed.

Affirmed.

Judges BRITT and ARNOLD concur.