CHARLES RUNYON, MARY ROBBINS RUNYON, AND PATSY SIMPSON WILLIAMS, PLAINTIFFS v. WARREN D. PALEY, CLAIRE PALEY, AND MIDGETT REALTY, INC., D/B/A MIDGETT REALTY, DEFENDANTS

No. 902SC757

(Filed 18 June 1991)

**Deeds § 64 (NCI4th)— restrictive covenant—personal—action to enforce—dismissed**

The trial court properly granted defendants' motion to dismiss plaintiffs' action to enforce a restrictive covenant, whether the order was pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) or was intended as a partial summary judgment, where Ruth Gaskins conveyed the land in question to Doward and Jacquelyn Brugh in 1960; the deed contained restrictive covenants which were not created by a common scheme of development; Ms. Gaskins retained property across a paved road which is now owned by her daughter, plaintiff Williams; Ms. Gaskins died in August, 1961; and plaintiffs brought this action to enforce the covenants upon learning that the current owners intended to place condominium units on the land. The restrictions on the land are deemed real only if the clear intention of the parties, as gleaned from the instrument creating the restrictions, was that the restrictions remain applicable to successors in title. The deed in this case contains a recital that the restrictions run with the land being conveyed and that they are consented to by the Brughs, but neither the deed nor any other recorded document states that the restrictions benefit Ms. Gaskins' successors or that they bind the Brughs' successors.

**Am Jur 2d, Covenants, Conditions, and Restrictions §§ 186, 214, 288, 304.**

Judge GREENE concurring in part and dissenting in part.

APPEAL by plaintiffs from Order entered 22 May 1990 by *Judge J. Herbert Small* in HYDE County Superior Court. Heard in the Court of Appeals 25 January 1991.

*Parker, Poe, Adams & Bernstein, by Charles C. Meeker and John J. Butler, for plaintiff appellants.*

*Young, Moore, Henderson & Alvis, P.A., by John N. Fountain, Henry S. Manning, Jr., Terryn D. Owens, and R. Christopher Dillon, for defendant appellees.*

COZORT, Judge.

Plaintiffs sued to enforce a restrictive covenant in an effort to prevent development of a tract of land by defendants. The trial court granted defendants' motion to dismiss for failure to state a claim upon which relief could be granted. We affirm, finding that plaintiffs are not entitled to enforce the covenant in question.

The case below involves a tract of land on Ocracoke Island known as the "Gaskins lot." That lot is bounded to the east by Pamlico Sound and to the west by a paved road now designated as State Road 1328. By deed dated 9 January 1960, Ruth Bragg Gaskins conveyed the lot to Doward H. and Jacquelyn O. Brugh. The land conveyed was

> subject to certain restrictions as to the use thereof, running with said land by whomsoever owned, until removed as herein set out; said restrictions, which are expressly assented to by the parties of the second part, in accepting this deed, are as follows:
>
> (1) Said lot shall be used for residential purposes and not for business, manufacturing, commercial or apartment house purposes; provided however, this restriction shall not apply to churches or to the office of a professional man which is located in his residence, and
>
> (2) Not more than two residences and such outbuildings as are appurtenant thereto, shall be erected or allowed to remain on said lot. This restriction shall be in full force and effect

until such time as adjacent or nearby properties are turned to commercial use, in which case the restrictions herein set out will no longer apply. The word "nearby" shall, for all intents and purposes, be construed to mean within 450 feet thereof.

Across the paved road from the lot conveyed, Ruth Gaskins retained property which is now owned by her daughter, plaintiff Patsy Williams. Mrs. Gaskins died in August 1961. Some time after her death, by mesne conveyances from the Brughs, defendant Warren D. Paley acquired the Gaskins lot.

Upon receiving information that Warren Paley and his wife Claire had entered into a partnership with Midgett Realty to place condominium units on the Gaskins lot, Charles and Mary Runyon, Patsy Williams, Ursula Jones, and Caroline Jones brought suit, alleging that

Ruth Bragg Gaskins placed [the] restrictive covenants [quoted above] on the Gaskins lot for the benefit of her property and neighboring property owners, specifically including and intending to benefit the Runyons.

These restrictive covenants have not been removed and are enforceable by plaintiffs.

Defendants moved to dismiss the lawsuit pursuant to Rule 12 of the North Carolina Rules of Civil Procedure; plaintiffs Ursula Jones and Caroline Jones took a voluntary dismissal pursuant to Rule 41; and the remaining plaintiffs moved for summary judgment pursuant to Rule 56. Both motions were scheduled for a hearing on 7 May 1990, and after that hearing the trial court entered an order captioned "Order of Dismissal" which decreed that

(1) Plaintiffs' First Claim for Relief contained in their Complaint be and it is hereby dismissed.

(2) Pursuant to G.S. 1A-1 Rule 54(b) the Court enters final judgment as to Plaintiffs' First Claim for Relief, being fewer than all the claims, and finds there is no just reason for delay in any appeal of this matter.

On appeal the plaintiffs contend that the trial court erred in dismissing their first claim for relief. They maintain that the Runyons, "as specifically intended beneficiaries of the restrictive covenants in question, are entitled to enforce those covenants." We disagree.

RUNYON v. PALEY

[103 N.C. App. 208 (1991)]

The plaintiffs concede that the covenants at issue were not created by a common scheme of development. Therefore, the intention of the original parties to the covenant governs, "and their intention must be gathered from study and consideration of *all* the covenants in the instrument or instruments creating the restrictions." J. Webster, *Real Estate Law in North Carolina* § 388 (3d ed. 1988) (emphasis in original). The parties' "intention may not be established by parol. Neither the testimony nor the declarations of a party is competent to prove intent." *Stegall v. Housing Authority*, 278 N.C. 95, 100, 178 S.E.2d 824, 828 (1971).

Although the Runyons are not named as beneficiaries of the restrictions in the deed of 9 January 1960 which conveyed the Gaskins lot to the Brughs (defendant Warren Paley's predecessor in title), the Runyons assert that they are entitled to enforce the covenants. They cite *Lamica v. Gerdes*, 270 N.C. 85, 90, 153 S.E.2d 814, 818 (1967), in support of the proposition "that a neighboring property owner who was an intended beneficiary of a restrictive covenant may enforce that covenant." Plaintiffs' reliance on *Lamica* is misplaced.

In *Lamica* the lot at issue was located within a subdivision. The developer first conveyed the lot in question subject to the same restrictions (including use for residential purpose) that applied to other lots in the subdivision. With those restrictions the lot was conveyed back to the developer. The developer then purported to convey the lot without restrictions, and members of the subdivision brought suit to enjoin the purchaser from constructing a dental-medical building on the lot. Unlike the restrictions in the case below, those in *Lamica* expressly empowered "any other person or person(s) owning any real property situate in said development or subdivision to prosecute any proceeding in law or equity against the person or persons attempting to violate any such covenant." *Lamica*, 270 N.C. at 90, 153 S.E.2d at 818. In holding for the plaintiffs the Court emphasized that their right to enforce the restrictions was "based upon express covenants appearing in defendant's recorded chain of title which specifically grant to the plaintiffs the right to enforce the restrictions." *Id.* at 91, 153 S.E.2d at 818; *accord Club, Inc. v. Lawrence*, 29 N.C. App. 547, 553, 225 S.E.2d 167, 170 (1976). In this case, nothing that appears of record makes the Runyons third-party beneficiaries of restrictions placed by Ruth Gaskins on the lot she conveyed to defendant Warren Paley's

predecessors in title. Accordingly, the Runyons are not entitled to enforce the restrictions placed on the Gaskins lot in January 1960.

As for Patsy Williams, the plaintiffs contend that, as current owner of part of the dominant estate, she is entitled to enforce the restrictive covenants in the deed of January 1960. Again, we must disagree.

The plaintiffs are correct, of course, that real covenants are enforceable not only between the original parties but also by subsequent owners "by mesne conveyances even though their deeds contain no reference to the restrictions." *Quadro Stations, Inc. v. Gilley*, 7 N.C. App. 227, 235, 172 S.E.2d 237, 242 (1970). The question presented, however, is whether the restrictions which plaintiff Williams seeks to enforce are real or personal.

We note initially that in North Carolina, despite the criticism of some commentators, restrictions on land are strictly construed against limitations on use. *See* J. Webster, *supra*, § 388. " 'Such restrictions will not be aided or extended by implication or enlarged by construction to affect lands not specifically described, *or to grant rights to persons in whose favor it is not clearly shown such restrictions are to apply.'* " *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 239 (1967) (emphasis added). A real covenant has three essential requirements: "(1) the intent of the parties as can be determined from the instruments of record; (2) the covenant must be so closely connected with the real property that it touches and concerns the land; and, (3) there must be privity of estate between the parties to the covenant." *Raintree Corp. v. Rowe*, 38 N.C. App. 664, 669, 248 S.E.2d 904, 908 (1978). The recital in a recorded document that a covenant is to run with the land

> is not controlling. The express intent of the parties can prohibit a covenant from running with the land, but it cannot make a personal covenant run with the land. . . . Ordinarily, restrictions in a deed are regarded as for the personal benefit of the grantor. The party claiming the benefits of the restrictions has the burden of showing they are covenants running with the land. These principles apply with especial force to persons who . . . are not parties to the instrument containing the restrictions.

*Id.* at 669, 248 S.E.2d at 908.

In the case below, the deed from Mrs. Gaskins to the Brughs contains a recital that the restrictions run with the land being conveyed and that they are "expressly assented to by" the Brughs (see above). However, neither the deed nor any other recorded document states that the restrictions benefit Mrs. Gaskins' successors or that they bind the Brughs' successors.

Plaintiffs note that "in *Quadro Stations, Inc. v. Gilley*, 7 N.C. App. 227, 172 S.E.2d 237 (1970), this Court enforced a restrictive covenant between subsequent purchasers, in the absence of a subdivision, because the original parties intended the covenant to run with the land." Plaintiffs fail to note, however, that in *Quadro Stations* the restrictions at issue were expressly binding on the successors of the original parties:

> The agreement provides that "SATTERFIELD, for itself, its successors and assigns, hereby covenants and agrees with SIBARCO, its successors and assigns, that . . . said lands shall and will not be used or permitted to be used, directly or indirectly, for the sale or advertising of any petroleum product, . . ." This language clearly evidences an intention on the part of the parties to impose on the land in question a negative easement rather than to enter an agreement personal between themselves.

*Id.* at 235, 172 S.E.2d at 242.

The lot in question in the case below was not part of a general scheme of development. The restrictions on it are deemed real only if the clear intention of the parties, as gleaned from the instrument creating the restrictions, was that the restrictions remain applicable to successors in title. No such intention appears from the instrument. Therefore, we hold that the restrictive covenants in the deed of 9 January 1960 were personal to Ruth Gaskins. They ceased to be enforceable upon her death. To hold otherwise in the absence of recorded notice of the continuing enforceability of the restrictions would tend to undermine our system of registration on which subsequent purchasers must rely.

We note finally that the transcript of the hearing before the trial court does not clearly indicate the extent to which matters outside the pleadings were considered by the trial court. The court's order of 22 May 1990 dismissed the plaintiffs' first claim for relief

pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1990). Rule 12(b) provides in part as follows:

> If, on a motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

The trial court's dismissal of the plaintiffs' first claim was proper pursuant to Rule 12(b)(6). Regardless of its label, if the order was intended as partial summary judgment, we note that the order would be proper pursuant to N.C. Gen. Stat. § 1A-1, Rule 56 (1990). The plaintiffs have suffered no prejudice based on the caption attached to the order.

The trial court's Order of 22 May 1990 is

Affirmed.

Judge PARKER concurs.

Judge GREENE concurs in part and dissents in part by separate opinion.

Judge GREENE concurring in part and dissenting in part.

The three elements required for a covenant to run at law are that: (1) the original covenanting parties intended the benefits and the burdens of the covenant to pass to the successors in interest of the original covenanting parties; (2) the act covenanted to be done or omitted, touches and concerns the land or estate conveyed; and (3) there is privity of estate between the owner of the burdened property and the party seeking to enforce the covenant. *See Raintree Corp. v. Rowe*, 38 N.C. App. 664, 669-70, 248 S.E.2d 904, 908 (1978); *see also* 5 R. Powell, Powell on Real Property § 673[2], 60-46 — 60-82 (1991); *Orange & Rockland Utilities v. Philwold Estates, Inc.*, 418 N.E.2d 1310, 1313-14 (N.Y. 1981). Applying these principles, I agree with the majority that Charles Runyon and Mary Robbins Runyon (Runyons) are not entitled to enforce the covenant. However, contrary to the majority, I believe that Patsy Simpson Williams (Williams) is entitled to enforce the covenant.

RUNYON v. PALEY

[103 N.C. App. 208 (1991)]

WILLIAMS

*Intent*: The intent of the covenanting parties must be found in the language of the documents creating the covenant and from other "instruments of record." *Raintree* at 669, 248 S.E.2d at 908 (intent of the parties must "be determined from the instruments of record"); *see also* Powell at § 673[2], 60-58; 20 Am.Jur. 2d, Covenants, Conditions, and Restrictions § 292, 856 (intent "must be ascertained through the language of the writing, construed in connection with the circumstances existing at the time it was executed").

The covenant itself is unambiguous in declaring that the burden of the restriction runs with the land. Specifically, the covenant provides that the land conveyed is "subject to certain restrictions as to the use thereof, running with said land by whomsoever owned, until removed as herein set out; said restrictions, which are expressly assented to by the parties of the second part . . . ."

On the question of whether the benefit of the covenant passes to the covenantee's successors, the document is silent. However, where other "instruments of record" reveal that the covenantee retained land contiguous to the conveyed land, and the retained land is manifestly benefited by the covenant, it is presumed that the parties intended for the benefits to pass to the successors of the original covenantee. *See Stegall v. Housing*, 278 N.C. 95, 102, 178 S.E.2d 824, 829 (1971) (heirs of original covenantee could enforce covenants placed on other land if they "have [not] parted with all interest in any land benefited by the covenant"); *Sheets v. Dillon*, 221 N.C. 426, 431, 20 S.E.2d 344, 347 (1942) ("grantor or its successor [who] still owns a part of the original tract" entitled to enforce "the restriction limiting the use of the portion sold"); *see also* 52 Wash. L. Rev., Running Covenants: An Analytical Primer, 861, 896 (1977) ("Courts routinely infer that the benefit attaches to and runs with . . . [the covenantee's] adjacent land").

> Thus, if A, the owner of a house with a vacant lot adjoining, were to sell the lot to B, securing at the same time from B a promise that he would not build within a certain distance of the line between the lot sold and that upon which the house stands, it would be a reasonable inference that the benefit of the promise was intended to run with the house lot.

American Law Institute Restatement of the Law of Property § 544, comment c (1944); *see also* 2 American Law of Property § 9.29, at 416 (1952) ("the courts have realized the social desirability of . . . [restrictive covenants] and have been extremely liberal in finding from the facts an intent to create a benefit appurtenant"); Powell at § 673[2] at 60-62 ("the retention of adjacent land by a grantor-covenantee" and the "benefiting of retained land as a result of the agreement" are factors "strongly favoring the running of the benefit").

Here, the instruments of record indicate that the covenantee retained adjacent property which was located directly across the street from the conveyed property. Furthermore, "the retained land is manifestly benefited by the covenant" in that the covenantee has some control over the nature and character of the neighborhood in which the covenantee's own land is situated. Thus, the parties to the original agreement are presumed to have intended for the covenant to run with the land, and there is no evidence in this record to rebut that presumption.

*Touches the Land*: This Court has previously noted that it is impossible to establish an absolute rule for determining whether a covenant touches and concerns the land, and that "[t]he question is one for the court to determine in the exercise of its best judgment upon the facts of each case.[ ]" *Raintree* at 670, 248 S.E.2d at 908. In the absence of an absolute rule, the following practical approach is helpful:

> Though some decisions seem to show a different tendency there would seem to be no reason for applying the rule of touching and concerning in an overtechnical manner, which is unreal from the standpoint of the parties themselves. Where the parties, as laymen and not as lawyers, would naturally regard the covenant as intimately bound up with the land, aiding the promisee as landowner or hampering the promisor . . . [as landowner], the requirement should be held fulfilled.

C. Clark, *Covenants and Interests Running With Land*, p. 99 (1947).

The present case presents a restriction which provides that the land in question may not be used "for business, manufacturing, commercial or apartment house purposes," and that "[n]ot more than two residences and such outbuildings as are appurtenant thereto, shall be erected or allowed to remain on said lot." By

**RUNYON v. PALEY**

[103 N.C. App. 208 (1991)]

limiting the use of this land, the covenantee, or promisee, is aided as a landowner. As previously stated, the covenant gives the covenantee some control over the nature and character of the neighborhood in which the covenantee's own land is situated. The covenantor, or promisor, is simultaneously hampered as a landowner in that his permitted use of the property is limited to residential, and to no more than two residential structures. Thus, the covenant touches and concerns the land.

*Privity*: There are at least

three kinds of privity of estate that have been mentioned by the courts — mutual privity, requiring that the original parties have had a mutual and continuing interest in the same land; horizontal privity, requiring that the covenant be made in connection with the conveyance of an estate in fee from one of the parties to the other; and vertical privity, requiring only that "the person presently claiming the benefit, or being subjected to the burden, is a successor to the estate of the original person so benefited or burdened."

*Gallagher v. Bell*, 516 A.2d 1028, 1037 (Md. App. 1986), *cert. denied*, 519 A.2d 1283 (1987); *see generally* Powell at § 673[2][c], 60-65 — 60-76. However, vertical privity, which minimizes the privity requirement, appears consistent with North Carolina law, *see Herring v. Wallace Lumber Co.*, 163 N.C. 481, 79 S.E. 876 (1913) (covenantee entitled to enforce against successor of original covenantor, covenant in timber deed), and with sound public policy. Powell at § 673[2], 60-76 ("the running of covenants generally [can serve] socially useful ends by aiding rather than hindering the alienability of land"). This also appears to be consistent with the modern view. *Id.* Indeed, "[f]ocusing on the precise relationship of the original contracting parties can create artificial results, causing covenants to be regarded as personal . . . when the covenant touches and concerns the land and the parties clearly intended for it to run with the land. The 'vertical' privity concept avoids that problem and focuses instead on the devolutional relationships . . . ." *Gallagher* at 1037; *see* 41 A.L.R. 3d Covenant in Deed Restricting Material to be Used in Building Construction, 1290, 1295 (where retained property benefited by the covenant "any person into whose hands such property passes may ordinarily enforce the restriction").

Here, Williams, the person claiming the benefit, and the defendants, the persons being subjected to the burden, are successors

to the original covenanting parties and therefore meet the privity of estate requirements.

In any event, privity of estate is not required for covenants to run in equity. Powell at § 673[1], 60-44. Covenants that run in equity are generally referred to as "equitable restrictions." *Id.* at 60-42. "For covenants to run in equity, courts require that: (1) the covenant 'touch and concern' the land; (2) the original covenanting parties intend the covenant to run; and (3) the successor to the burden have 'notice' of the covenant." *Id.* at 60-44. North Carolina appears to allow enforcement of covenants in equity. *See Northfleet v. Cromwell,* 70 N.C. 633, 641 (1874) ("the covenant will be enforced in equity against an assignee of the covenantor, with notice . . . "). Here, there is no question that Warren D. and Claire Paley, as successors to the burden, had record notice of the restrictions.

Therefore, at law and at equity, the dismissal of Williams' claim was error.

## RUNYONS

The Runyons obtained their property from Mrs. Gaskins in 1954 and there were no restrictive covenants placed in that deed. Furthermore, the Runyons were not named as beneficiaries in the instrument creating the covenants which were placed on the properties conveyed by Mrs. Gaskins to the Brughs nor was the Runyon property and the Brugh property part of a general plan of development. Therefore, there exists no intent, express or inferred, that the Runyons were to benefit from the covenants on the Brugh property. Therefore, the Runyons were not entitled to seek enforcement of the covenant and dismissal of their claim was not error.