CHARLES RUNYON, MARY ROBBINS RUNYON, AND PATSY SIMPSON
WILLIAMS v. WARREN D. PALEY, CLAIRE PALEY, AND MIDGETT
REALTY, INC., D/B/A MIDGETT REALTY

No. 306A91

(Filed 8 May 1992)

1. Deeds § 58 (NCI4th)— restrictive covenants—validity—
distinctions

It is well settled that an owner of land in fee has a right
to sell his land subject to any restrictions he may see fit
to impose, provided the restrictions are not contrary to public
policy. Such restrictions may be classified as either personal
covenants, which create a personal obligation or right en-
forceable at law only between the original covenanting parties,
or as real covenants, which create a servitude upon the land
subject to the covenant for the benefit of another parcel of
land. A real covenant may be enforced at law or in equity
by the owner of the dominant estate against the owner of
the servient estate, whether the owners are the original cove-
nanting parties or successors in interest.

Am Jur 2d, Covenants, Conditions, and Restrictions
§§ 16, 20, 21, 29-31, 36, 37.

2. Deeds § 65 (NCI4th)— restrictive covenant—real covenant—
requirements

A restrictive covenant is a real covenant that runs with
the land of the dominant and servient estates only if the sub-
ject of the covenant touches and concerns the land, there is
privity of estate between the party enforcing the covenant
and the party against whom the covenant is being enforced,
and the original covenanting parties intended the benefits and
the burdens of the covenant to run with the land.

Am Jur 2d, Covenants, Conditions, and Restrictions
§§ 29, 30, 33-35.

3. Deeds § 65 (NCI4th)— restrictive covenant—real covenant—
touch and concern

Plaintiffs showed that a restrictive covenant touches
and concerns not only the servient estate owned by defend-
ants, but also the properties owned by plaintiffs where the
right to restrict the use of defendants' property would af-

IN THE SUPREME COURT

RUNYON v. PALEY

[331 N.C. 293 (1992)]

fect plaintiffs' ownership interests in the property owned by them. It is not necessary for a covenant to have a physical effect on land for it to touch and concern the land; it is sufficient that the covenant have some economic impact on the parties' ownership rights and it is essential that the covenant in some way affect the legal rights of the covenanting parties as landowners. The covenant does not touch and concern the land and will not run with the land where the burdens and benefits created by the covenant are of such a nature that they may exist independently from the parties' ownership interests in land.

Am Jur 2d, Covenants, Conditions, and Restrictions §§ 33, 35.

4. Deeds § 65 (NCI4th) — restrictive covenant — real covenant — privity of estate

In an action to enforce a restrictive covenant as one running with the land at law, horizontal privity of estate was established and vertical privity was established as to defendant Paley and plaintiff Williams but not as to plaintiffs Runyon. A party seeking to enforce at law a covenant as one running with the land must show the presence of both horizontal and vertical privity, horizontal privity being privity of estate between the covenantor and covenantee at the time the covenant was created, and vertical privity being privity of estate between the covenanting parties and their successors in interest. The Runyons did not make a sufficient showing of vertical privity because their only interest was acquired before the creation of the covenant.

Am Jur 2d, Covenants, Conditions, and Restrictions § 34.

5. Deeds § 65 (NCI4th) — restrictive covenant — real covenant — intent of parties

The trial court erred in an action to enforce restrictive covenants by concluding that plaintiff Williams was not entitled to enforce the covenants against defendants where the instrument creating the restrictions was ambiguous as to the parties' intention that the benefit of the covenants run with the land and there was ample evidence establishing that the parties intended that the restrictive covenants be enforceable by the owner of the property retained by Mrs. Gaskins and

RUNYON v. PALEY

[331 N.C. 293 (1992)]

now owned by plaintiff Williams. Defendants offered no contrary evidence and relied solely upon the theory that plaintiff Williams could not enforce the restrictions because the covenants did not expressly state the parties' intent and because plaintiff Williams had failed to show that the covenants were created as part of a common scheme of development.

**Am Jur 2d, Covenants, Conditions, and Restrictions §§ 4, 5.**

6. **Deeds § 78 (NCI4th)— restrictive covenant—real covenant not enforceable—equitable servitude**

   In certain circumstances, a party unable to enforce a restrictive covenant as a real covenant running with the land may nevertheless be able to enforce the covenant as an equitable servitude. In order to enforce a restrictive covenant on the theory of equitable servitude, it must be shown that the covenant touches and concerns the land and that the original covenanting parties intended the covenant to bind the person against whom enforcement is sought and to benefit the person seeking to enforce the covenant. The touch and concern element need only be established where the covenant is sought to be enforced either by or against successors in interest to the original or named parties to the covenant, and the party seeking to enforce the covenant must meet the intent requirement by showing that the covenanting parties intended that the burden run to successors in interest or the covenantor's land. The covenants at issue met the touch and concern requirement, but the plaintiffs Runyon failed to show that the original covenanting parties intended that they be permitted to enforce the covenants either in a personal capacity or as owners of any land they now own.

**Am Jur 2d, Covenants, Conditions, and Restrictions § 26.**

7. **Deeds § 78 (NCI4th)— restrictive covenants—notice—chain of title—no provision regarding enforcement**

   It is well settled in North Carolina that a restrictive covenant is not enforceable, either at law or in equity, against a subsequent purchaser of property burdened by the covenant unless notice of the covenant is contained in an instrument in his or her chain of title. While it would be advisable to include an express provision with respect to rights of enforce-

RUNYON v. PALEY

[331 N.C. 293 (1992)]

ment in the conveyance that creates them, such notice is not required. However, for a restrictive covenant to be enforceable against a subsequent purchaser, there must be some evidence in the public records from which it reasonably may be inferred that the covenant was intended to benefit the party seeking enforcement, either personally or as a landowner. Plaintiff Williams has shown that the public records provided sufficient notice to defendants to enable her to enforce the restrictive covenants against them, but, while the records in defendants' chain of title unambiguously provide notice of the restrictive covenants, they do not in any way suggest any right of enforcement in favor of the plaintiffs Runyon, either personally or as owners of the land.

**Am Jur 2d, Covenants, Conditions, and Restrictions §§ 304, 305, 307-309.**

Justices MITCHELL and WEBB concur in the result.

ON plaintiff Williams' appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 103 N.C. App. 208, 405 S.E.2d 216 (1991), affirming an order of dismissal entered by *Small, J.,* at the 7 May 1990 session of Superior Court, HYDE County. On 4 September 1991, we allowed the petition for discretionary review as to additional issues filed by plaintiffs Runyon. Heard in the Supreme Court 12 March 1992.

*Parker, Poe, Adams & Bernstein, by Charles C. Meeker and John J. Butler, for plaintiff-appellants.*

*Young, Moore, Henderson & Alvis, P.A., by John N. Fountain, Henry S. Manning, Jr., and R. Christopher Dillon, for defendant-appellees.*

MEYER, Justice.

This case involves a suit to enjoin defendants from constructing condominium units on their property adjacent to the Pamlico Sound on Ocracoke Island. Plaintiffs maintain that defendants' property is subject to restrictive covenants that prohibit the construction of condominiums. The sole question presented for our review is whether plaintiffs are entitled to enforce the restrictive covenants.

On 17 May 1937, Ruth Bragg Gaskins acquired a four-acre tract of land located in the Village of Ocracoke bounded on the

**RUNYON v. PALEY**

[331 N.C. 293 (1992)]

west by the Pamlico Sound and on the east by Silver Lake. By various deeds, Mrs. Gaskins conveyed out several lots, which were later developed for residential use.

One and one-half acres of the sound-front property, part of which is at issue here, were conveyed by Mrs. Gaskins and her husband to plaintiffs Runyon on 1 May 1954. On 6 January 1960, the Runyons reconveyed the one and one-half acre tract, together with a second tract consisting of one-eighth of an acre, to Mrs. Gaskins. By separate deeds dated 8 January 1960, Mrs. Gaskins, then widowed, conveyed to the Runyons a lake-front lot and a fifteen-foot-wide strip of land that runs to the shore of Pamlico Sound from the roadway separating the lake-front and sound-front lots. This fifteen-foot strip was part of the one and one-half acre parcel that the Runyons had reconveyed to Mrs. Gaskins.

The next day, 9 January 1960, Mrs. Gaskins conveyed the remainder of the one and one-half acre parcel to Doward H. Brugh and his wife, Jacquelyn O. Brugh. Included in the deed of conveyance from Mrs. Gaskins to the Brughs was the following:

> BUT this land is being conveyed subject to certain restrictions as to the use thereof, running with said land by whomsoever owned, until removed as herein set out; said restrictions, which are expressly assented to by [the Brughs], in accepting this deed, are as follows:
>
> (1) Said lot shall be used for residential purposes and not for business, manufacturing, commercial or apartment house purposes; provided, however, this restriction shall not apply to churches or to the office of a professional man which is located in his residence, and
>
> (2) Not more than two residences and such outbuildings as are appurtenant thereto, shall be erected or allowed to remain on said lot. This restriction shall be in full force and effect until such time as adjacent or nearby properties are turned to commercial use, in which case the restrictions herein set out will no longer apply. The word "nearby" shall, for all intents and purposes, be construed to mean within 450 feet thereof.

TO HAVE AND TO HOLD the aforesaid tract or parcel of land and all privileges and appurtenances thereunto belonging or in anywise thereunto appertaining, unto them, the [Brughs],

RUNYON v. PALEY

[331 N.C. 293 (1992)]

as tenants by the entirety, their heirs and assigns, to their only use and behoof in fee simple absolute forever, [b]ut subject always to the restrictions as to use as hereinabove set out.

Prior to the conveyance of this land to the Brughs, Mrs. Gaskins had constructed a residential dwelling in which she lived on lake-front property across the road from the property conveyed to the Brughs. Mrs. Gaskins retained this land and continued to live on this property until her death in August 1961. Plaintiff Williams, Mrs. Gaskins' daughter, has since acquired the property retained by Mrs. Gaskins.

By mesne conveyances, defendant Warren D. Paley acquired the property conveyed by Mrs. Gaskins to the Brughs. Thereafter, defendant Warren Paley and his wife, defendant Claire Paley, entered into a partnership with defendant Midgett Realty and began constructing condominium units on the property.

Plaintiffs brought this suit, seeking to enjoin defendants from using the property in a manner that is inconsistent with the restrictive covenants included in the deed from Mrs. Gaskins to the Brughs. In their complaint, plaintiffs alleged that the restrictive covenants were placed on the property "for the benefit of [Mrs. Gaskins'] property and neighboring property owners, specifically including and intending to benefit the Runyons." Plaintiffs further alleged that the "restrictive covenants have not been removed and are enforceable by plaintiffs."

Defendants moved to dismiss the lawsuit, and plaintiffs thereafter moved for summary judgment. Following a hearing on both motions, the trial court granted defendants' motion to dismiss for failure to state a claim upon which relief could be granted and, pursuant to Rule 54(b), rendered a final judgment after having determined that there was no just reason for delay in any appeal of the matter. The Court of Appeals affirmed the trial court, concluding that the restrictive covenants were personal to Mrs. Gaskins and became unenforceable at her death. Judge Greene dissented in part, concluding that the dismissal of plaintiff Williams' claim was erroneous.

At the outset, we note that at the hearing on plaintiffs' and defendants' motions, the trial court allowed plaintiffs to present evidence of matters outside the pleadings. Because it is not clear whether the trial court excluded this evidence in ruling on defend-

RUNYON v. PALEY

[331 N.C. 293 (1992)]

ants' motion to dismiss, the trial court's order must be treated on appeal as a *partial* summary judgment for defendants.[1] N.C. R. Civ. P. 12(b)(6).

Having considered the evidence presented to the trial court, we conclude that plaintiff Williams presented sufficient evidence to show that the covenants at issue here are real covenants enforceable by her as an owner of property retained by Mrs. Gaskins, the covenantee. Accordingly, we reverse that part of the Court of Appeals' decision that affirmed the trial court's dismissal of plaintiff Williams' claim. However, we agree with the Court of Appeals that the covenants are not enforceable by the Runyons, and we therefore affirm that part of the Court of Appeals' decision that concerns the dismissal of the Runyons' claim.

[1] It is well established that an owner of land in fee has a right to sell his land subject to any restrictions he may see fit to impose, provided that the restrictions are not contrary to public policy. *Sheets v. Dillon*, 221 N.C. 426, 431, 20 S.E.2d 344, 347 (1942). Such restrictions are often included as covenants in the deed conveying the property and may be classified as either personal covenants or real covenants that are said to run with the land. *See* 5 Richard R. Powell, *Powell on Real Property* ¶ 673 (1991) [hereinafter *Powell on Real Property*]. The significant distinction between these types of covenants is that a personal covenant creates a personal obligation or right enforceable at law only between the original covenanting parties, 5 *Powell on Real Property* ¶ 673[1], at 60-41, whereas a real covenant creates a servitude upon the land subject to the covenant ("the servient estate") for the benefit of another parcel of land ("the dominant estate"), *Cummings v. Dosam, Inc.*, 273 N.C. 28, 32, 159 S.E.2d 513, 517 (1968). As such, a real covenant may be enforced at law or in equity by the owner of the dominant estate against the owner of the servient estate, whether the owners are the original covenanting parties or successors in interest.

## I. Real Covenants at Law

[2] A restrictive covenant is a real covenant that runs with the land of the dominant and servient estates only if (1) the subject

---

1. Plaintiffs Runyon also alleged claims against defendants for breach of a settlement agreement and for willful and intentional trespass to real property. These claims were not subjects of the trial court's order and are therefore not before this Court.

RUNYON v. PALEY

[331 N.C. 293 (1992)]

of the covenant touches and concerns the land, (2) there is privity of estate between the party enforcing the covenant and the party against whom the covenant is being enforced, and (3) the original covenanting parties intended the benefits and the burdens of the covenant to run with the land. *Raintree Corp. v. Rowe*, 38 N.C. App. 664, 669, 248 S.E.2d 904, 908 (1978); 5 *Powell on Real Property* ¶ 673[1], at 60-43; 3 Herbert Thorndike Tiffany, *The Law of Real Property* §§ 848-854 (Basil Jones ed., 3d ed. 1939) [hereinafter *Tiffany Real Property*].

### A. Touch and Concern

[3] As noted by several courts and commentators, the touch and concern requirement is not capable of being reduced to an absolute test or precise definition. *See Neponsit Property Owners Ass'n v. Emigrant Indus. Sav. Bank*, 278 N.Y. 248, 256-58, 15 N.E.2d 793, 795-96, *reh'g denied*, 278 N.Y. 704, 16 N.E.2d 852 (1938); Charles E. Clark, *Real Covenants and Other Interests Which "Run With Land"* 96 (2d ed. 1947) [hereinafter Clark, *Real Covenants*]. Focusing on the nature of the burdens and benefits created by a covenant, the court must exercise its best judgment to determine whether the covenant is related to the covenanting parties' ownership interests in their land. Clark, *Real Covenants* 97.

For a covenant to touch and concern the land, it is not necessary that the covenant have a physical effect on the land. *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 624 (Utah 1989). It is sufficient that the covenant have some economic impact on the parties' ownership rights by, for example, enhancing the value of the dominant estate and decreasing the value of the servient estate. 7 George W. Thompson, *Commentaries on the Modern Law of Real Property* § 3155, at 84 (1962) [hereinafter *Thompson on Real Property*]. It is essential, however, that the covenant in some way affect the legal rights of the covenanting parties as landowners. Where the burdens and benefits created by the covenant are of such a nature that they may exist independently from the parties' ownership interests in land, the covenant does not touch and concern the land and will not run with the land. *See Choisser v. Eyman*, 22 Ariz. App. 587, 529 P.2d 741 (1974) (covenant capable of enforcement regardless of status as owner of interest in land is personal in nature); *Flying Diamond Oil Corp.*, 776 P.2d at 623 (Utah) ("[T]o touch and concern the land, a covenant must bear upon the use and enjoyment of the land and be of the kind that

RUNYON v. PALEY

[331 N.C. 293 (1992)]

the owner of an estate or interest in land may make because of his ownership right.").

Although not alone determinative of the issue, the nature of the restrictive covenants at issue in this case (building or use restrictions) is strong evidence that the covenants touch and concern the dominant and servient estates. As recognized by some courts, a restriction limiting the use of land clearly touches and concerns the estate burdened with the covenant because it restricts the owner's use and enjoyment of the property and thus affects the value of the property. *Net Realty Holding Trust v. Franconia Properties*, 544 F. Supp. 759, 762 (E.D. Va. 1982); *see also* 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 167 (1965). A use restriction does not, however, always touch and concern the dominant estate. *See Stegall v. Housing Authority*, 278 N.C. 95, 178 S.E.2d 824 (1971) (holding that covenant did not meet the touch and concern requirement where the record failed to disclose the location of the grantor's property "in the area" or the distance from the grantor's property to the restricted property). To meet the requirement that the covenant touch and concern the dominant estate, it must be shown that the covenant somehow affects the dominant estate by, for example, increasing the value of the dominant estate.

In the case at bar, plaintiffs have shown that the covenants sought to be enforced touch and concern not only the servient estate owned by defendants, but also the properties owned by plaintiffs. The properties owned by defendants, plaintiff Williams, and plaintiffs Runyon comprise only a portion of what was at one time a four-acre tract bounded on one side by the Pamlico Sound and on the other by Silver Lake. If able to enforce the covenants against defendants, plaintiffs would be able to restrict the use of defendants' property to uses that accord with the restrictive covenants. Considering the close proximity of the lands involved here and the relatively secluded nature of the area where the properties are located, we conclude that the right to restrict the use of defendants' property would affect plaintiffs' ownership interests in the property owned by them, and therefore the covenants touch and concern their lands.

## B. Privity of Estate

[4] In order to enforce a restrictive covenant as one running with the land at law, the party seeking to enforce the covenant must

also show that he is in privity of estate with the party against whom he seeks to enforce the covenant. 5 *Powell on Real Property* ¶ 673[2]; 7 *Thompson on Real Property* § 3155, at 84. Although the origin of privity of estate is not certain, the privity requirement has been described as a substitute for privity of contract, which exists between the original covenanting parties and which is ordinarily required to enforce a contractual promise. 3 *Tiffany Real Property* § 851, at 451 n.32. Thus, where the covenant is sought to be enforced by someone not a party to the covenant or against someone not a party to the covenant, the party seeking to enforce the covenant must show that he has a sufficient legal relationship with the party against whom enforcement is sought to be entitled to enforce the covenant.

For the enforcement at law of a covenant running with the land, most states require two types of privity: (1) privity of estate between the covenantor and covenantee at the time the covenant was created ("horizontal privity"), and (2) privity of estate between the covenanting parties and their successors in interest ("vertical privity"). William B. Stoebuck, *Running Covenants: An Analytical Primer*, 52 Wash. L. Rev. 861, 867 (1977) [hereinafter Stoebuck, 52 Wash. L. Rev. 861]. The majority of jurisdictions have held that horizontal privity exists when the original covenanting parties make their covenant in connection with the conveyance of an estate in land from one of the parties to the other. 7 *Thompson on Real Property* § 3155, at 85, and cases cited therein. A few courts, on the other hand, have dispensed with the showing of horizontal privity altogether, requiring only a showing of vertical privity. *See, e.g., Nicholson v. 300 Broadway Realty Corp.*, 7 N.Y.2d 240, 164 N.E.2d 832, 196 N.Y.S.2d 945 (1959) (vertical privity sufficient); *but see Eagle Enters. v. Gross*, 39 N.Y.2d 505, 349 N.E.2d 816, 384 N.Y.S.2d 717 (1976) (referring to vertical privity as meeting horizontal privity requirement).

Vertical privity, which is ordinarily required to enforce a real covenant at law, requires a showing of succession in interest between the original covenanting parties and the current owners of the dominant and servient estates. As one scholar has noted:

> The most obvious implication of this principle [of vertical privity] is that the burden of a real covenant may be enforced against remote parties only when they have succeeded to the covenantor's *estate* in land. Such parties stand in privity of

estate with the covenantor. Likewise, the benefit may be enforced by remote parties only when they have succeeded to the covenantee's *estate*. They are in privity of estate with the covenantee.

Stoebuck, 52 Wash. L. Rev. 861, 876 (emphasis added).

We adhere to the rule that a party seeking to enforce a covenant as one running with the land at law must show the presence of both horizontal and vertical privity. In order to show horizontal privity, it is only necessary that a party seeking to enforce the covenant show that there was some "connection of interest" between the original covenanting parties, such as, here, the conveyance of an estate in land. *Accord* Restatement of Property § 534 (1944).

In the case *sub judice*, plaintiffs have shown the existence of horizontal privity. The record shows that the covenants at issue in this case were created in connection with the transfer of an estate in fee of property then owned by Mrs. Gaskins. By accepting the deed of conveyance, defendants' predecessors in title, the Brughs, covenanted to use the property for the purposes specified in the deed and thereby granted to Mrs. Gaskins a servitude in their property.

To review the sufficiency of vertical privity in this case, it is necessary to examine three distinct relationships: (1) the relationship between defendants and the Brughs as the covenantors; (2) the relationship between plaintiff Williams and the covenantee, Mrs. Gaskins; and (3) the relationship between plaintiffs Runyon and Mrs. Gaskins. The evidence before us shows that the Brughs conveyed all of their interest in the restricted property and that by mesne conveyances defendant Warren Paley succeeded to a fee simple estate in the property. Thus, he is in privity of estate with the covenantors. Any legal interests held by the other defendants were acquired by them from defendant Warren Paley. As successors to the interest held by defendant Warren Paley, they too are in privity of estate with the covenantors. Plaintiff Williams has also established a privity of estate between herself and the covenantee. Following the death of Mrs. Gaskins, the property retained by Mrs. Gaskins was conveyed by her heirs to her daughter, Eleanor Gaskins. Thereafter, Eleanor Gaskins conveyed to plaintiff Williams a fee simple absolute in that property. The mere fact that defendants and plaintiff Williams did not acquire the property directly from the original covenanting parties is of no moment.

Regardless of the number of conveyances that transpired, defendants and plaintiff Williams have succeeded to the estates then held by the covenantor and covenantee, and thus they are in vertical privity with their successors in interest. Such would be true even if the parties had succeeded to only a part of the land burdened and benefitted by the covenants. 5 *Powell on Real Property* ¶ 673[3], at 60-85 to -86; 5 Restatement of Property §§ 536, 551 (1944). Plaintiffs Runyon have not, however, made a sufficient showing of vertical privity. The Runyons have not succeeded in any interest in land held by Mrs. Gaskins at the time the covenant was created. The only interest in land held by the Runyons was acquired by them prior to the creation of the covenant. Therefore, they have not shown vertical privity of estate between themselves and the covenantee with respect to the property at issue in this case. Because the Runyons were not parties to the covenant and are not in privity with the original parties, they may not enforce the covenant as a real covenant running with the land at law.

## C. Intent of the Parties

[5]   Defendants argue that plaintiff Williams is precluded from enforcing the restrictive covenants because the covenanting parties who created the restrictions intended that the restrictions be enforceable only by Mrs. Gaskins, the original covenantee. According to defendants, such a conclusion is necessitated where, as here, the instrument creating the covenants does not expressly state that persons other than the covenantee may enforce the covenants. We disagree.

Defendants correctly note that our law does not favor restrictions on the use of real property. It is generally stated that "[r]estrictions in a deed will be regarded as for the personal benefit of the grantor unless a contrary intention appears, and the burden of showing that they constitute covenants running with the land is upon the party claiming the benefit of the restriction." *Stegall*, 278 N.C. at 101, 178 S.E.2d at 828. This, however, does not mean that we will always regard a restriction as personal to the covenantee unless the restriction expressly states that persons other than the covenantee may enforce the covenant. *See, e.g., Reed v. Elmore*, 246 N.C. 221, 98 S.E.2d 360 (1957) (concluding that covenant was intended to benefit land despite the absence of an express statement to that effect).

"Whether restrictions imposed upon land . . . create a personal obligation or impose a servitude upon the land enforceable by subsequent purchasers [of the covenantee's property] is determined by the intention of the parties at the time the deed containing the restriction was delivered." *Stegall*, 278 N.C. at 100, 178 S.E.2d at 828; *Reed*, 246 N.C. at 224, 98 S.E.2d at 362. The question of the parties' intention is one that the court must decide by applying our well-established principles of contract construction.

Our case law, as well as that of other jurisdictions, has been less than clear in delineating who should decide the issue of the parties' intent. Some courts have stated that the parties' intent is a question of fact that should be decided by a jury. *See Gallagher v. Bell*, 69 Md. App. 199, 212, 516 A.2d 1028, 1035 (1986), *cert. denied*, 308 Md. 382, 519 A.2d 1283 (1987). Other courts, including our Court of Appeals, have expressed the view that the parties' intention with respect to the terms of a deed is a question of law for the court's consideration. *See Mason-Reel v. Simpson*, 100 N.C. App. 651, 397 S.E.2d 755 (1990). We believe that the correct view is that the effect to be given *unambiguous* language contained in a written instrument is a question of law, *Lane v. Scarborough*, 284 N.C. 407, 200 S.E.2d 622 (1973), but where the language is *ambiguous* so that the effect of the instrument must be determined by resort to extrinsic evidence that raises a dispute as to the parties' intention, the question of the parties' intention becomes one of fact. However, the determination of the parties' intention is not for the jury but is the responsibility of the judge in construing and interpreting the meaning of the instrument. 4 Samuel Williston, *A Treatise on the Law of Contracts* § 601 (Walter H.E. Jaeger ed., 3d ed. 1961 & Supp. 1991); *see also* N.C.G.S. § 39-1.1 (1984).

Ordinarily, the parties' intent must be ascertained from the deed or other instrument creating the restriction. *Stegall*, 278 N.C. at 100, 178 S.E.2d at 828. However, when the language used in the instrument is ambiguous, the court, in determining the parties' intention, must look to the language of the instrument, the nature of the restriction, the situation of the parties, and the circumstances surrounding their transaction. *Id.; Reed*, 246 N.C. at 224, 98 S.E.2d at 362; *Monk v. Kornegay*, 224 N.C. 194, 200, 29 S.E.2d 754, 758 (1944).

We conclude that the language of the deed creating the restrictions at issue here is ambiguous with regard to the intended enforcement of the restrictions. The deed from Mrs. Gaskins to the

Brughs provided that the property conveyed was being made "subject to certain restrictions as to the use thereof, running with said land by whomsoever owned, until removed [due to a change of conditions in the surrounding properties] as herein set out." As noted by the dissent in the Court of Appeals, this provision unequivocally expresses the parties' intention that the burden of the restrictions runs with the land conveyed by the deed.[2] *Runyon v. Paley*, 103 N.C. App. 208, 215, 405 S.E.2d 216, 220 (1991) (Greene, J., concurring in part and dissenting in part). In the habendum clause of the deed, the parties also included language providing that the estate granted shall be "*subject always* to the restrictions as to use as hereinabove set out." (Emphasis added.) We conclude that the language of the deed creating the restrictions is such that it can reasonably be interpreted to establish an intent on the part of the covenanting parties not only to bind successors to the covenantor's interest, but also to benefit the property retained by the covenantee.

Having determined that the instrument creating the restrictions at issue here is ambiguous as to the parties' intention that the benefit of the covenants runs with the land, we must determine whether plaintiff Williams has produced sufficient evidence to show that the covenanting parties intended that the covenants be enforceable by the covenantee's successors in interest. Defendants argue that plaintiff Williams has not met her burden because (1) the covenants do not expressly state that the benefit of the covenant was to run with any land retained by the covenantee; and

---

2. The majority of the Court of Appeals' panel incorrectly concluded that this provision was not a sufficient expression of the parties' intent to bind the successors of the conveyed estate. In so deciding, the Court of Appeals misplaced its reliance on North Carolina case law establishing that a recital that a covenant is to run with the land cannot convert into a real covenant one that is personal because it does not meet the other legal requirements for a covenant to run with the land. *See, e.g., Raintree Corp.*, 38 N.C. App. at 669, 248 S.E.2d at 908 (holding that a covenant that did not touch and concern the land could not be considered a real covenant running with the land despite the parties' expressed intent that it run with the land). Where the parties include *unambiguous* language to the effect that the restrictive covenant is to run with the burdened land, the benefitted land, or both, it is conclusively established that the parties so intended. *Flying Diamond Oil Corp.*, 776 P.2d at 627 (Utah) (stating that "[a]n express statement . . . that the parties intend to create a covenant running with the land is usually dispositive of the intent issue"); 5 *Powell on Real Property* ¶ 673[2], at 60-61; *accord Starmount Co. v. Memorial Park*, 233 N.C. 613, 65 S.E.2d 134 (1951) (enforcing against covenantor's successor in interest a restrictive covenant containing a recital virtually identical to the one included in the restrictive covenants at issue here).

RUNYON v. PALEY

[331 N.C. 293 (1992)]

(2) plaintiff Williams has not shown that the property was conveyed as part of a general plan of subdivision, development, and sales subject to uniform restrictions. While evidence of the foregoing would clearly establish the parties' intent to benefit the covenantee's successors, such evidence is not the only evidence that may be used to prove the parties' intent.

We find strong evidence in the record of this case to suggest that the covenanting parties intended the restrictive covenants to be real covenants, the benefit of which attached to the land retained by Mrs. Gaskins, the covenantee. The covenants at issue here are building and use restrictions that restrict the use of the burdened property to "two residences and such outbuildings as are appurtenant thereto" to be used for "residential purposes." The covenants expressly prohibit the use of the property for "business, manufacturing, commercial or apartment house purposes." The only exception provided by the covenants is that the latter restriction "shall not apply to churches or to the office of a professional man which is located in his residence." As noted by some courts, restrictions limiting the use of property to residential purposes have a significant impact on the value of neighboring land, and thus the very nature of such a restriction suggests that the parties intended that the restriction benefit land rather than the covenantee personally. *See, e.g., Bauby v. Krasow*, 107 Conn. 109, 115, 139 A. 508, 510 (1927) (concluding that only reasonable inference to be drawn from use restriction "is that its sole purpose was to protect the [covenantee's] homestead"); *accord Elliston v. Reacher*, 2 Ch. 374, *aff'd*, 2 Ch. 665 (1908). We need not decide whether the nature of a building or use restriction, in and of itself, is sufficient evidence of the parties' intent that the benefit run with the land, however.

In this case, the evidence also shows that the property now owned by defendants was once part of a larger, relatively secluded tract bounded by Silver Lake and the Pamlico Sound. Prior to conveying the property now owned by defendants, Mrs. Gaskins had erected on a portion of the tract a single-family residence in which she lived. At some point, her property was subdivided into several lots. Mrs. Gaskins conveyed several of these lots, on which residences were thereafter erected. Although none of these deeds of conveyance contained restrictions limiting the use of the property to residential purposes, it is reasonable to assume that Mrs. Gaskins, by later restricting the use of defendants' property,

RUNYON v. PALEY

[331 N.C. 293 (1992)]

intended to preserve the residential character and value of the relatively secluded area. This evidence is further supported by the fact that Mrs. Gaskins retained land across the road from the property now owned by defendants and continued to reside in her dwelling located on the retained land. We believe that this evidence of the parties' situation and of the circumstances surrounding their transaction strongly supports a finding that the covenanting parties intended that the restrictive covenants inure to the benefit of Mrs. Gaskins' land and not merely to Mrs. Gaskins personally.

Moreover, we conclude that the language of the deed creating the restrictive covenants supports a finding that the parties intended the benefit of the covenants to attach to the real property retained by Mrs. Gaskins. The pertinent language of the deed provides that the property was conveyed subject to certain use restrictions "running with said land by whomsoever owned, until removed," and that the property is "subject always to the restrictions." As the Connecticut Appellate Court concluded after analyzing similar language in *Grady v. Schmitz*, 16 Conn. App. 292, 547 A.2d 563, *cert. denied*, 209 Conn. 822, 551 A.2d 755 (1988), we believe that this language suggests a broad, rather than a limited, scope of enforcement. That the deed expressly stated that the covenants were to run with the land and continue indefinitely, unless and until the surrounding property is "turned to commercial use," indicates that the parties intended the restrictive covenants to be enforceable by Mrs. Gaskins as the owner of the land retained by her or by her successors in interest to the retained land. *See Grady*, 16 Conn. App. at 297, 547 A.2d at 566.

Having reviewed the language of the deed creating the restrictive covenants, the nature of the covenants, and the evidence concerning the covenanting parties' situation and the circumstances surrounding their transaction, we conclude that plaintiff Williams presented ample evidence establishing that the parties intended that the restrictive covenants be enforceable by the owner of the property retained by Mrs. Gaskins and now owned by plaintiff Williams. Defendants did not offer any contrary evidence of the parties' intent but relied solely upon the theory that plaintiff Williams could not enforce the restrictions because the covenants did not expressly state the parties' intent and because plaintiff Williams had failed to show that the covenants were created as part of a common scheme of development. Based upon the uncontradicted

evidence presented by plaintiff Williams, the trial court erred in concluding that plaintiff Williams, the successor in interest to the property retained by Mrs. Gaskins, was not entitled to enforce the restrictive covenants against defendants.

## II. Equitable Servitudes

[6]   With regard to plaintiffs Runyon, we must go further because, in certain circumstances, a party unable to enforce a restrictive covenant as a real covenant running with the land may nevertheless be able to enforce the covenant as an equitable servitude. Although damages for breach of a restrictive covenant are available only when the covenant is shown to run with the land at law, *"perform-ance* of a covenant will be decreed in favor of persons claiming under the parties to the agreement or by virtue of their relationship thereto, notwithstanding the technical character and form of the covenant." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 26, at 596 (1965) (emphasis added). To enforce a restriction in equity, it is immaterial that the covenant does not run with the land or that privity of estate is absent. *Bauby,* 107 Conn. 109, 139 A. 508; *Johnson v. Robertson,* 156 Iowa 64, 135 N.W. 585 (1912).

> "A covenant, though in gross at law, may nevertheless be binding in equity, even to the extent of fastening a servitude or easement on real property, or of securing to the owner of one parcel of land a privilege, or, as it is sometimes called, 'a right to an amenity' in the use of an adjoining parcel, by which his own estate may be enhanced in value or rendered more agreeable as a place of residence."

*Johnson,* 156 Iowa at 77, 135 N.W. at 590 (quoting *Parker v. Nightingale,* 88 Mass. (6 Allen) 341, 344 (1863)).

In this case, plaintiffs seek injunctive relief, which is available for the breach of an equitable servitude. Therefore, we now ex-amine the question of whether plaintiffs Runyon, although unable to enforce the covenants as covenants running with the land, may nevertheless enforce the covenants against defendants on the theory of equitable servitudes.

"Even though a promise is unenforceable as a covenant at law because of failure to meet one of the requirements, the promise may be enforced as an equitable servitude against the promisor or a subsequent taker who acquired the land with notice of the restrictions on it." *Traficante v. Pope,* 115 N.H. 356, 359, 341 A.2d

782, 784 (1975). In order to enforce a restrictive covenant on the theory of equitable servitude, it must be shown (1) that the covenant touches and concerns the land, and (2) that the original covenanting parties intended the covenant to bind the person against whom enforcement is sought and to benefit the person seeking to enforce the covenant. 5 *Powell on Real Property* ¶ 673[1], at 60-44.

## A. Touch and Concern

Whether a covenant is of such a *character* that it touches and concerns land is determined according to the same principles applicable to real covenants running at law. Unlike with real covenants, however, it is not always necessary to show that both the burden and the benefit touch and concern land. To enforce a restrictive covenant as an equitable servitude, it is only necessary to show that the covenant is of such a nature as to bind the party sued and to be enforceable by the party suing. The covenant itself establishes these rights and obligations between the original covenanting parties as well as any named parties intended to be benefitted thereby. Thus, the touch and concern element need only be established where the covenant is sought to be enforced either by or against successors in interest to the original or named parties to the covenant. Where, for example, a covenantee or a named beneficiary seeks to enforce the restriction against the covenantor's successor in interest, the party seeking enforcement need not show that the benefit touches and concerns his land but need show only that the burden touches and concerns the land of the party against whom he seeks to enforce the restriction. *See Bauby*, 107 Conn. 109, 139 A. 508.[3] Similarly, a successor in interest to the

---

3. We recognize that at least one scholar has suggested that our courts will not permit the covenantee to enforce a restrictive covenant, at law or in equity, against the covenantor's successor in interest unless the covenantee is able to demonstrate that the benefit of the covenant touches and concerns land owned by him and is not personal to him. *See* Stoebuck, 52 Wash. L. Rev. 861, 902 (interpreting *Stegall*). We do not agree that *Stegall* or any other opinion of this Court set forth such a requirement. As noted by the California Court of Appeal, "the talisman for enforcement [of an equitable servitude] . . . rests . . . upon a determination of the *intention* of those creating the covenant." *B.C.E. Dev. v. Smith*, 215 Cal. App. 3d 1142, 1147, 264 Cal. Rptr. 55, 59 (1989). Where, as in *Stegall*, it is shown that the covenanting parties intended that the covenant be enforceable by the covenantee only for the benefit of property owned by it, then the covenantee may not enforce the covenant once it has parted with all its interest in the benefitted land. *Stegall*, 278 N.C. at 102, 178 S.E.2d at 829. This, however, does not mean that a covenant personal to the covenantee may not be enforced in equity simply because the covenant does not touch and concern land owned

RUNYON v. PALEY

[331 N.C. 293 (1992)]

covenantee or to a named beneficiary who seeks to enforce the restriction against the original covenantor must show only that the benefit of the restriction touches and concerns the successor's land. Where, however, the covenant is sought to be enforced by *and* against parties neither of whom were the covenanting parties or named beneficiaries, the party seeking to enforce the restriction must show that the covenant touches and concerns the land of both.

Plaintiffs Runyon have shown that the covenants at issue here meet the legal requirement that the covenants touch and concern defendants' property as well as the property owned by the Runyons. Because a covenant that touches and concerns the land at law will also touch and concern the land in equity, we need not further examine this requirement.

## B. Intent of the Parties

A party who seeks to enforce a covenant as an equitable servitude against one who was not an original party to the covenant must show that the original covenanting parties intended that the covenant bind the party against whom enforcement is sought. To meet this requirement, the party seeking to enforce the covenant must show that the covenanting parties intended that the burden run to successors in interest of the covenantor's land.

If the party seeking enforcement was not an original party to the covenant, he must show that the covenanting parties intended that he be able to enforce the restriction. Maurice T. Brunner, Annotation, *Comment Note.— Who May Enforce Restrictive Covenant or Agreement as to Use of Real Property*, 51 A.L.R.3d 556, 573 (1973). It is presumed in North Carolina that covenants may be enforced only between the original covenanting parties. *Stegall*, 278 N.C. at 101, 178 S.E.2d at 828. However, this presumption may be overcome by evidence that (1) the covenanting parties intended that the covenant personally benefit the party seeking enforcement, or (2) the covenanting parties intended that the covenant benefit property in which the party seeking enforcement holds a present interest. *B.C.E. Dev. v. Smith*, 215 Cal. App. 3d 1142, 1147, 264 Cal. Rptr. 55, 59 (1989). The latter may be shown by evidence of a common scheme of development, *e.g., Higdon v. Jaffa*,

---

by the covenantee. Equity will intervene to enforce a covenant the benefit of which is in gross just as it will intervene to enforce a covenant appurtenant to the covenantee's land.

231 N.C. 242, 56 S.E.2d 661 (1949); of succession of interest to benefitted property retained by the covenantee, *e.g.*, *Sheets v. Dillon*, 221 N.C. 426, 20 S.E.2d 344 (1942); or of an express statement of intent to benefit property owned by the party seeking enforcement, *e.g.*, *Lamica v. Gerdes*, 270 N.C. 85, 153 S.E.2d 814 (1967).

Applying these principles as well as the rules of construction used to determine the parties' intent that a covenant run with the land, which likewise apply here, we conclude that plaintiffs Runyon have failed to show that the original covenanting parties intended that they be permitted to enforce the covenants either in a personal capacity or as owners of any land they now own. The Runyons were not parties to the covenants, and neither they nor their property are mentioned, either explicitly or implicitly, as intended beneficiaries in the deed creating the covenants or in any other instrument in the public records pertaining to defendants' property. Although they own property closely situated to defendants', in an area which was primarily residential at the time the restrictive covenants were created, they did not acquire their property as part of a plan or scheme to develop the area as residential property. In fact, they acquired their property free of any restrictions as to the use of their property. Finally, the Runyons purchased their property prior to the creation of the restrictive covenants at issue here, and thus they cannot be said to be successors in interest to any property retained by the covenantee that was intended to be benefitted by the covenants.

An affidavit filed by Mr. Runyon is the only evidence tending to support the Runyons' claim that they were intended beneficiaries of the covenants. This affidavit, filed with plaintiffs' motion for summary judgment, states that the covenants were created as a result of a "three-party land swap" whereby the Runyons conveyed their sound-front property to effectuate two transfers of the property: the transfer of a fifteen-foot-wide strip of land to the Runyons for access to the Pamlico Sound and the transfer of the remainder of the property to the Brughs, defendants' predecessors in interest. Mr. Runyon alleges in his affidavit that the covenants were included in the deed of conveyance to the Brughs "for the benefit of the land retained by [Mrs.] Gaskins and neighboring property owners, specifically including and intending to benefit [the Runyons]."

This affidavit by Mr. Runyon, no matter how informative of the parties' intent, is not competent evidence to support the Runyons' claim. Unlike the evidence relied upon to support plaintiff Williams' claim, the allegations contained in this affidavit reference no matters of public record that tend to explain ambiguous deed language by showing the parties' situation or the circumstances surrounding their transaction. The Runyons' reliance on this affidavit is an attempt to use inadmissible parol evidence to add to or vary the terms of the instrument to include the Runyons, who owned no interest in the property conveyed, as named beneficiaries to the covenants. Moreover, even if the allegations of the affidavit were admissible to explain some ambiguous language of the instrument, the affidavit would still be incompetent under our well-established rule that declarations and testimony of the parties are not admissible to prove the covenanting parties' intent. *See Stegall*, 278 N.C. at 100, 178 S.E.2d at 828.

### III. Notice

[7] It is well settled in our state that a restrictive covenant is not enforceable, either at law or in equity, against a subsequent purchaser of property burdened by the covenant unless notice of the covenant is contained in an instrument in his chain of title. N.C.G.S. § 47-18 provides:

> No . . . conveyance of land . . . shall be valid to pass any property interest as against . . . purchasers for a valuable consideration . . . but from the time of registration thereof in the county where the land lies . . . .

N.C.G.S. § 47-18(a) (1984). Unlike in many states, actual knowledge, no matter how full and formal, is not sufficient to bind a purchaser in our state with notice of the existence of a restrictive covenant. *Turner v. Glenn*, 220 N.C. 620, 625, 18 S.E.2d 197, 201 (1942).

> A purchaser is chargeable with notice of the existence of the restriction only if a proper search of the public records would have revealed it . . . . If the restrictive covenant is contained in a separate instrument or rests in parol and not in a deed in the chain of title and is not referred to in such deed a purchaser, under our registration law, has no constructive notice of it.

*Id.*

Notwithstanding the fact that the covenants at issue here were created in a properly recorded deed of conveyance from Mrs. Gaskins to defendants' predecessors, defendants contend that they are purchasers for value and that N.C.G.S. § 47-18 precludes enforcement of the restrictions against them. Relying on *Reed v. Elmore*, 246 N.C. 221, 98 S.E.2d 360, defendants argue that a restrictive covenant is not enforceable against a subsequent purchaser of the property unless the instruments in the chain of title *expressly* state "*both* an intention to bind succeeding grantees and an intention to permit enforcement by successors of the grantor or named beneficiaries."

While it would be advisable to include an express provision with respect to the rights of enforcement in the conveyance that creates them, we do not agree that such notice, as defendants demand, is required. An examination of our case law reveals that we have required the certainty of an express statement in the chain of title only with respect to the *existence* of a restrictive covenant. *See Reed*, 246 N.C. 221, 98 S.E.2d 360; *Turner*, 220 N.C. 620, 18 S.E.2d 197. " 'If the restrictive covenant is contained in a separate instrument or rests in parol and [is] not [referred to] in a deed in the chain of title,' " a subsequent purchaser will take the property free of restrictions. *Reed*, 246 N.C. at 230, 98 S.E.2d at 367 (quoting *Turner*, 220 N.C. at 625, 18 S.E.2d at 201). Where, however, the restriction is contained in the chain of title, we have not hesitated to enforce the restriction against a subsequent purchaser when the court may reasonably infer that the covenant was created for the benefit of the party seeking enforcement.

In *Reed*, the deed creating the restrictive covenant provided:.

"The foregoing tract of land [lot 3] is conveyed subject to the easement of a road leading from Pineville-Matthews Road to lot designated No. 2 . . . and lot designated No. 1 . . . and the right is hereby reserved to the owners of said Lots 1 and 2 to the use in common of said private road as a means of ingress, regress and egress to and from said tracts of land to the Pineville-Matthews Road.

"The foregoing lands are conveyed subject to the condition or restriction that no structure shall be erected by the grantee within 550 feet of the Pineville-Matthews Road, it being understood and agreed that the 100 foot strip leading to said tract of land from the Pineville-Matthews Road shall not be

used for purpose of constructing any building thereon, and this restriction shall likewise apply to Lot No. 4, retained by the grantor, said lot No. 4 being adjacent to lands hereby conveyed."

*Reed*, 246 N.C. at 223, 98 S.E.2d at 361. Despite the fact that the deed and other instruments of record did not expressly state who could enforce the restrictions, we concluded that subsequent purchasers of lot 4 were provided sufficient notice that the deed imposed on their property an equitable servitude in favor of lots 1, 2, and 3. *Id.* at 226, 230, 98 S.E.2d at 364, 366.

This is not to say that a restrictive covenant, the existence of which is clearly set forth in the chain of title, may be enforced by any person who is able to show by any means possible that the covenanting parties intended that he be permitted to enforce the covenant. For a restrictive covenant to be enforceable against a subsequent purchaser, there must be *some* evidence in the public records from which it reasonably may be inferred that the covenant was intended to benefit, either personally or as a landowner, the party seeking enforcement.

In this case, a proper search of the public records pertaining to defendants' property would have revealed not only the existence of the restrictive covenants, but also that prior to the conveyance the property was part of a larger tract owned by Mrs. Gaskins. Upon conveying the property to defendants' predecessors, Mrs. Gaskins did not part with all of her property but retained adjacent or nearby property that would be benefitted by the restrictive covenants. From this evidence, it reasonably may be inferred that the restrictive covenants were intended to benefit the property retained by Mrs. Gaskins. Therefore, plaintiff Williams, Mrs. Gaskins' successor in title, has shown that the public records provided sufficient notice to defendants to enable her to enforce the restrictive covenants against them.

The Runyons have not made a sufficient showing so as to charge defendants with notice of the existence of any restriction that may have inured or was intended to inure to their benefit. While the records in defendants' chain of title unambiguously provide notice of the restrictive covenants, they do not in any way suggest any right of enforcement in favor of the Runyons, either personally or as owners of any land. The day before the restrictive covenant was created, the Runyons did acquire from Mrs. Gaskins

a fifteen-foot strip of land adjacent to the restricted property. Even assuming *arguendo* that recordation of this conveyance would have provided some notice of Mrs. Gaskins' intent to benefit the Runyons, a question about which we express no opinion, this conveyance is nonetheless of no avail to the Runyons because it was not recorded by them until some fifteen to sixteen years after the Brughs recorded their deed of conveyance from Mrs. Gaskins. Thus, the deed from Mrs. Gaskins to the Runyons provided no notice to defendants that the Runyons claimed any interest in adjacent land that may have been benefitted by the restrictive covenants.

For the reasons stated herein, we conclude that the restrictive covenants contained in the deed from Mrs. Gaskins to defendants' predecessors are not personal covenants that became unenforceable at Mrs. Gaskins' death but are real covenants appurtenant to the property retained by Mrs. Gaskins at the time of the conveyance to defendants' predecessors in interest. As a successor in interest to the property retained by Mrs. Gaskins, plaintiff Williams is therefore entitled to seek enforcement of the restrictive covenants against defendants. We therefore reverse that part of the Court of Appeals' decision that affirmed the trial court's dismissal of plaintiff Williams' claim and remand this case to that court for further remand to the Superior Court, Hyde County, for further proceedings not inconsistent with this opinion.

We further conclude that the Runyons have not proffered sufficient evidence to show that they have standing to enforce the restrictive covenants, either personally or as owners of any land intended to be benefitted by the restrictions. We therefore affirm that part of the Court of Appeals' decision that affirmed the trial court's dismissal of the Runyons' claim.

Affirmed in part, reversed in part, and remanded.

Justices MITCHELL and WEBB concur in the result.