WILLIAM EARNEY WALKER and wife JEANNE SMITH WALKER, Plaintiffs
v.
BRSS, LLC and MCC OUTDOOR, LLC aka MORRIS COMMUNICATIONS CORPORATION OUTDOOR, LLC dba FAIRWAY OUTDOOR ADVERTISING, Defendants
No. COA06-1340
Court of Appeals of North Carolina.
Filed August 21, 2007
This case not for publication
Adams & Osteen, by J. Patrick Adams, for plaintiff-appellants.
B. Douglas Martin for defendant-appellee BRSS, LCC.
Isaacson, Isaacson & Sheridan, LLP, by Jennifer N. Fountain, for defendant-appellee MCC Outdoor, LLC aka Morris Communications Corporation Outdoor, LLC dba Fairway Outdoor Advertising.
HUNTER, Judge.
William Earney Walker and his wife, Jeanne Smith Walker ("plaintiffs"), appeal the trial court's denial of their motion for summary judgment and the trial court's granting of BRSS, LLC's ("BRSS") and MCC Outdoor, LLC, aka Fairway Outdoor Advertising's ("Fairway") motions for summary judgment. Plaintiffs acknowledge that there are no material issues of fact in dispute in this case, and that the case may be resolved as a matter of law. After careful consideration, we affirm.
Plaintiffs purchased real property located at Interstate 40 and Boston Road (formerly Patterson Avenue), Greensboro, North Carolina in January 1985. In April 1986, plaintiffs and Fairway entered into a lease for a billboard sign to be placed on the property. The original lease term was for a three (3) year period with a provision for automatic year-to-year extensions not to exceed five (5) years. A memorandum of lease is recorded in the office of the Register of Deeds of Guilford County Book 3506, page 69. Fairway made rental payments to plaintiffs in accordance with the lease and continued payment after the lease term expired.
In January 1997, plaintiffs sold the real property to a third party. The conveyance from plaintiffs to the grantee was via a general warranty deed ("the deed") and contained language that the grantors would receive the rental income from the billboard until 2021 or until the sign was removed.
In February 1997, plaintiffs entered into a new lease with Fairway for the billboard sign.[1] The lease term was for eight (8) years beginning 1 June 1997 with automatic extensions for each subsequent year with the extensions not to exceed ten (10) years. The extensions were effective unless Fairway cancelled by written notice. In June 2002, BRSS purchased the property at a foreclosure sale and a deed was recorded. The deed to BRSS contained the following language:
Title to the property herein above described is hereby conveyed subject to all valid and subsisting restrictions, reservations (including without limitation the Memorandum of Lease to Naegele Outdoor Advertising[2] as recorded in Book 3506, Page 69 of the Guilford County Registry), covenants, conditions, rights of ways and easements properly of record, if any[.]
Guilford County Registry, Book 5543, pages 929-32.
In April 2005, Fairway notified plaintiffs that it was terminating its lease with plaintiffs at the end of the original term, which was 31 May 2005. After terminating the lease with plaintiffs, Fairway entered into a lease with BRSS, the current owner of the property.
Plaintiffs filed this action claiming the right to "`the income from the rental of the sign until December 31, 2021'" and has appealed that issue to this Court. Fairway has acknowledged that it has an obligation to pay annual rent for the lease but argues that BRSS is entitled to the payments. BRSS argued to the trial court that it was entitled to the rent.
"We review a trial court's order for summary judgment de novo to determine whether there is a `genuine issue of material fact' and whether either party is `entitled to judgment as a matter of law.'" Robins v. Town of Hillsborough, 361 N.C. 193, 196, 639S.E.2d 421, 423 (2007) (citation omitted). The deed in issue here, in which plaintiffs conveyed property to a third party not part of this litigation, follows:
The grantees acknowledge that a sign is erected on the premises and the area on which the sign is located is leased to Fairway Sign Company. The grantors will retain the right to receive the income from the rental of the sign until December 31, 2021, or until the sign is removed, whichever comes first. The grantees acknowledge that the sign company will have a right to enter the property to repair and maintain its sign.
Guilford County Registry, Book 4484, page 1177.

I.
Plaintiffs first argue that the language in the deed created a "reservation" or "exception" to collect rent monies from the leasing of the sign and that a "reservation" or an "exception" is different from a covenant. We disagree. Reservations and exceptions contained in deeds are merely different versions of a covenant. See Raby v. Reeves, 112 N.C. 688, 690, 16 S.E. 760, 760 (1893) (a reservation in an easement requiring the grantee to pay rent for the easement is a covenant); see also Amerson v. Lancaster, 106 N.C. App. 51, 54, 415 S.E.2d 93, 95 (1992) (explaining how a reservation operates differently from an exception but the terms are used interchangeably); Woodward v. Cloer, 68 N.C. App. 331, 333, 315 S.E.2d 335, 336 (1984) (characterizing a "reservation" as a "covenant"). Accordingly, we must determine whether the covenant in the deed is enforceable against either defendant. One who owns land in fee "has a right to sell his land subject to any restrictions he may see fit to impose, provided that the restrictions are not contrary to public policy." Runyon v. Paley, 331 N.C. 293, 299, 416 S.E.2d 177, 182 (1992). Covenants in a deed are classified as either personal covenants or real covenants. Id. The distinction between the two is significant. Personal covenants "create[] a personal obligation or right enforceable at law only between the original covenanting parties[.]" Id. On the other hand, a real covenant creates a servitude upon the land for the benefit of another parcel and runs with the land and is enforceable against successors in interest. Id. at 299, 416 S.E.2d at 182-83.
A covenant is a real covenant only if:
(1) the subject of the covenant touches and concerns the land, (2) there is privity of estate between the party enforcing the covenant and the party against whom the covenant is being enforced, and (3) the original covenanting parties intended the benefits and the burdens of the covenant to run with the land.
Id. at 299-300, 416 S.E.2d at 183. Additionally, in order for a covenant to be enforceable against a subsequent purchaser for value there must be notice of the covenant in the purchaser's chain of title. Id. at 313, 416 S.E.2d at 191.
Neither defendant disputes the third element, that the original covenanting parties intended the benefits and burdens to run with the land; thus, we do not address that issue. Because there are two defendants in this case and because their interests differ, we address them each separately where appropriate and jointly where appropriate.

A. Defendant Fairway
Defendant Fairway correctly points out that whatever rights plaintiffs have in the land, if any, are unenforceable against Fairway because there is a lack of privity between Fairway and plaintiffs. In North Carolina, "a party seeking to enforce a covenant as one running with the land at law must show the presence of both horizontal and vertical privity." Id. at 303, 416 S.E.2d at 184. Horizontal privity only requires that the "party seeking to enforce the covenant show . . . some `connection of interest' between the original covenanting parties[.]" Id. at 303, 416 S.E.2d at 184-85. Vertical privity, on the other hand, "requires a showing of succession in interest between the original covenanting parties and the current owners of the dominant and servient estates." Id. at 302, 416 S.E.2d at 184. Because we find that plaintiffs and Fairway are not in vertical privity we reach only that issue.
In the instant case, Fairway did not take title to the property subject to the language in the deed. Indeed, nothing in the record indicates that Fairway ever owned the property in question and it cannot be said that there was any privity of estate. The record merely indicates that Fairway leased a sign on the property. Accordingly, there is no vertical privity between plaintiffs and Fairway, and plaintiffs cannot enforce any right created in the deed against Fairway. Id. (vertical privity requires privity of estate). There being no privity of estate between plaintiffs and Fairway, we hold that the trial court properly denied plaintiffs' summary judgment motion and did not err in granting Fairway's motion for summary judgment.

B. Defendant BRSS
Defendant BRSS concedes that they are in privity with plaintiffs but instead argue that plaintiffs' failure to record the prior lease with Fairway make it unnecessary to determine whether the covenant touches and concerns the land. Because BRSS did not have record notice of the lease agreement between plaintiff and Fairway, we agree.
It is well settled that "actual knowledge, no matter how full and formal, is not sufficient to bind a purchaser in our state with notice of the existence of a . . . covenant." Runyon, 331 N.C. at 313, 416 S.E.2d at 191. Accordingly, a "covenant is not enforceable, either at law or in equity, against a subsequent purchaser of property burdened by the covenant unless notice of the covenant is contained in an instrument in his chain of title." Id.
Under N.C. Gen. Stat. § 47-18 (2005) any lease of real property with a term more than three (3) years must be recorded in the county register of deeds office in order to be effective against subsequent purchasers for value. Plaintiffs failed to record the 1997 lease with Fairway even though the initial term was for eight (8) years. Accordingly, when BRSS purchased the property in 2002 they had no record notice of the lease. Even actual notice of an unrecorded lease does not bind the subsequent purchaser. Simmons v. Quick Stop Food Mart, 307 N.C. 33, 42, 296 S.E.2d 275, 281 (1982) ("[b]ecause [plaintiff]'s lease was not recorded prior to the date on which [defendant] recorded her deed, [defendant] did not take the deed subject to the lease"). Contrary to plaintiffs' assertion, the presence of the billboard on the property does not overcome plaintiffs' failure to record and does not establish any legally binding notice to BRSS. Thus, because plaintiffs failed to record the lease agreement between themselves and Fairway we hold that BRSS had no record notice of the covenant and it cannot be enforced against them. Therefore, it cannot be said that the covenant can operate against BRSS.
Additionally, plaintiffs' contention that the lease was referred to in BRSS's deed is similarly without merit. The lease actually referred to in the deed was the prior recorded lease between plaintiffs and Fairway which expired in 1994. Thus, the prior lease had no legal effect and plaintiffs' failure to record the new lease meant that BRSS took the property free of the lease interest and is not bound by the lease provisions. See N.C. Gen. Stat. § 47-18.

C. Termination of the Lease:

Applicability to both defendants
Alternatively, we also note that Fairway's termination of the 1997 lease in May 2005, which plaintiffs do not argue was improper, also terminated whatever interests plaintiffs had in the property. Plaintiffs had merely retained the "`right to receive the income from the rental of the sign[,]'" but not a leasehold in the property. Plaintiffs had no right to the income, against either defendant, once the lease was cancelled by Fairway, and thus, for this reason we also hold that the trial court properly denied plaintiffs' motion for summary judgment and did not err in granting BRSS's and Fariway's motion for summary judgment.
Affirmed.
Judges ELMORE and GEER concur.
Report per Rule 30(e).
NOTES
[1] The issue of whether plaintiff had a right to lease the sign to Fairway in February 1997 after it had previously conveyed the property to a third party in January 1997 was not raised by the parties. Accordingly, we do not address it.
[2] Naegele was acquired by one of the defendant sign companies and does business as Fairway.