DILLON, Judge.
 

 *666
 
 Plaintiffs brought this action seeking a declaration and other relief concerning an easement extending across Plaintiffs' property to Defendants' property. Plaintiffs appeal the trial court's order granting summary judgment to Defendants. After review of the
 
 *671
 
 materials before the trial court, we reverse and remand.
 

 I. Background
 

 Plaintiffs and Defendants own adjacent tracts of land in rural Alamance County. Defendants access a nearby State road via easements (private roads) which span across Plaintiffs' land. Plaintiffs built two gates and fencing somewhere along these private roads to fence in their horses. These gates do not prevent Defendants from being able to access the public road, as Plaintiffs have provided Defendants with the access code for the gates. However, Defendants contend that, based on language in the chain of title concerning the easements, Plaintiffs are not allowed to construct the gates on the easement. Plaintiffs commenced this action, seeking a declaration of their right to construct and maintain the gates in question. Defendant counterclaimed, seeking a declaration that Plaintiffs have no right to erect and maintain the gates and an order directing Plaintiffs to remove the gates.
 

 A. Title History and Creation of the Easements
 

 The chain of title at issue is described herein. The map below is included for clarity. The map depicts six tracts of land, referenced in
 
 *667
 
 this opinion as Tracts 1-6. Plaintiffs own Tracts 1 and 3. Defendants own Tract 4. The other tracts, Tracts 2, 5, and 6, are not subject to this present dispute. Defendants access Roney Lineberry Road (a public road shown at the top of the map just above Tract 2) via two private roads. These private roads are depicted on the map below as a dotted line and a thick line, respectively. The location of these roads, as shown on the map, is approximate. The record before us is not clear as to the precise location of these roads.
 

 ?
 

 The history of these tracts, including Plaintiffs' and Defendants' tracts, is as follows:
 

 As of 1989, Tracts 1-6 were all part of a
 
 single tract
 
 (approximately one hundred nine (109) acres in area) and were owned by the Estate of C.R. Roney (the "Estate"). Over the years, there have been four maps filed to subdivide this large tract, ultimately into six tracts. And over the years, two easement roads have been created to provide access to these tracts as they were being created: the dotted-line road depicted above was created by a map recorded in 1989, and the solid line road depicted above was created by a map that was recorded in 2000.
 

 1. 1989: Division of Large Tract into Two Tracts; Creation of First Easement
 

 In 1989, the Estate recorded a map (the "1989 Map") that divided the one hundred nine (109) acre tract into
 
 two
 
 separate tracts: one tract consisting of approximately sixty-six
 
 *672
 
 (66) acres, which today comprises
 
 *668
 
 Tracts 1 and 2; and another tract consisting of approximately forty-three (43) acres, which today comprises Tracts 3-6.
 

 Through the filing of this 1989 Map, an easement was created (the "1989 Easement"), depicted above as the dotted-line road, to provide access points of egress and ingress to various parts of
 
 both
 
 large tracts. That is, the 1989 Easement provides more than one access point to each of the two large tracts, as it meanders at or near the border dividing the two tracts.
 

 Of significance to this present dispute, the 1989 Map indicates that this 1989 Easement is to remain "open for egress and regress" for the benefit of the owner of the newly formed sixty-six (66) acre and forty-three (43) acre tracts created by the division, stating as follows:
 

 Note: The existing private road shall remain open for egress and regress to [the sixty-six (66) acre and forty-three (43) acre tracts formed by the 1989 Map]. Road shall be maintained by the "owner" or "owners" of [the two tracts].
 

 2. 1996: Division of 66-Acre Tract into Two Tracts
 

 In 1996, the owner of the sixty-six (66) acre tract filed a map (the "1996 Map") subdividing that tract into two tracts, depicted above as Tract 1 (nine acres) and Tract 2 (fifty-seven (57) acres). The 1996 Map depicts the 1989 Easement, the dotted-line road depicted above, in essentially the same location as depicted on the 1989 Map, reiterating that the easement is to remain open for the benefit of the adjacent forty-three (43) acre tract as well as the newly formed Tracts 1 and 2, which had made up the sixty-six (66) acre tract.
 

 3. 2000: Division of 43-Acre Tract into Three Tracts
 

 In 2000, the owner of the forty-three (43) acre tract filed a map (the "2000 Map") subdividing that tract into three tracts, depicted above as Tract 3, Tract 4, and a tract now comprised of Tracts 5 and 6.
 
 [1]
 
 The 2000 Map depicts the top portion of the 1989 Easement, but also depicts a
 
 new private road
 
 (the "2000 Easement"), shown in the above map as the solid line, to provide access from the 1989 Easement to the three newly formed tracts, Tracts 3, 4 and what are now 5 and 6.
 

 The 2000 Easement is described on the 2000 Map as a "30' R/W [right-of-way] EASEMENT." The 2000 Map, however, does not contain
 
 *669
 
 any other language concerning this new 2000 Easement. That is, unlike the 1989 Map's description of the 1989 Easement, there is
 
 no
 
 language in the 2000 Map indicating that the 2000 Easement is to remain "open."
 

 B. Plaintiffs' Construction of the Gates
 

 In 2017, Plaintiffs, who own Tracts 1 and 3, erected two access gates to keep their horses secured on their tracts. There is nothing in the record indicating exactly
 
 where
 
 on Plaintiffs' tracts the gates were installed. In other words, there is nothing in the record to indicate whether the gates were installed on the 1989 Easement or the 2000 Easement, as some portion of both easements are on Plaintiffs' land.
 

 Plaintiffs provided Defendants with the access code to the gates so that Defendants could still access Roney Lineberry Road by way of the easements. But, over the course of time, a number of disputes between the parties arose concerning the gates.
 

 C. Procedural History
 

 In July 2017, Plaintiffs commenced this action requesting a declaratory judgment regarding their right to construct and maintain the gates. Defendants answered and counterclaimed, requesting removal of the access gates.
 

 In March 2018, after a hearing on the matter, the trial court entered an amended judgment declaring that Plaintiffs were prohibited "from having gates, bars, fences and the like on the Private Road"
 
 and
 
 directing Plaintiffs to "remove the gates erected upon the Private Road[.]" The trial court certified its order for immediate appellate review. Plaintiffs timely appealed.
 

 *673
 
 In April 2018, while their appeal was pending with our Court, Plaintiffs filed a motion for relief with the trial court, requesting that they be allowed to offer into evidence a new survey which purported to show where the gates were in fact located. Plaintiff contended that this survey constituted new evidence on which the trial court should reverse its prior order. The trial court indicated that it would likely deny the motion, but did not have jurisdiction to do so in light of Plaintiffs' pending appeal.
 

 II. Analysis
 

 Plaintiffs appeal an order granting Defendants summary judgment against Plaintiffs' claims. We review a grant of summary judgment
 
 de novo
 
 , to determine whether the record shows, in the light most favorable
 
 *670
 
 to the nonmoving party, that there was no genuine issue of material fact remaining for the trial court to resolve.
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 523-24,
 
 649 S.E.2d 382
 
 , 385 (2007). In our review, we may only consider the record on appeal, composed of the materials before the trial court at the time of the hearing.
 
 Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.,
 

 315 N.C. 688
 
 , 690,
 
 340 S.E.2d 374
 
 , 377 (1986).
 

 Typically, the owner of a servient estate "may erect gates across [an easement] when necessary to the reasonable enjoyment of his estate, provided they are not of such nature as to materially impair or unreasonably interfere" with the purpose of the easement to the dominant estate.
 
 Chesson v. Jordan
 
 ,
 
 224 N.C. 289
 
 , 293,
 
 29 S.E.2d 906
 
 , 909 (1944) ;
 
 accord
 

 Merrell v. Jenkins
 
 ,
 
 242 N.C. 636
 
 , 637-38,
 
 89 S.E.2d 242
 
 , 243-44 (1955). However, our Supreme Court has held that the owner of a servient estate generally may
 
 not
 
 erect gates on an easement where the instrument granting the easement provides that the easement is to remain "open," stating as follows:
 

 Generally, the grant of a way without reservation of the right to maintain gates does not necessarily preclude the owner of the land from having them;
 
 unless it is expressly stipulated that the way shall be an open one or it appears from the terms of the grant or the circumstances that such was the intention
 
 , the owner of the servient estate may erect gates across the way if they are constructed so as not to interfere unreasonably with the right of passage.
 

 Setzer v. Annas
 
 ,
 
 286 N.C. 534
 
 , 539,
 
 212 S.E.2d 154
 
 , 157 (1975) (emphasis added). Indeed, our Supreme Court has interpreted express language suggesting that an easement remain "open" to mean that it must be free of obstructions, such as fences or gates.
 
 See
 

 Patton v. W. Carolina Educ. Co.
 
 ,
 
 101 N.C. 408
 
 , 409-11,
 
 8 S.E. 140
 
 , 141-42 (1888) (holding that "[a] street, with gates or fences across it, is not what was reserved" by a deed stating "that the street now opened up through to the college land ...
 
 shall be kept open
 
 " (emphasis added)).
 

 It is unquestioned that the 2000 Map creating the 2000 Easement and the 1989 Map creating the 1989 Easement are in Defendants' chain of title. Defendants acquired their property, Tract 4, in 2007 in fee simple via a general warranty deed. The deed expressly conveyed "a permanent access easement for ingress, egress, and regress over and upon the 30 ft right of way as shown on said plat of survey" recorded in "Plat Book 65 at Page 118," the location of the 2000 Map. It is true that the 2000 Map
 
 *671
 
 contains no language requiring the easement to remain open, but it does refer to the "[r]ight of way along Existing Private Road as per Deed Book 1056, Page 56." Deed Book 1056, Page 56, contains the deed conveying all of Tracts 1 and 2 from the Roney family, "subject to the right of way of the private road shown on [Plat Book No. 39 at Page 160,]" which is the 1989 Map.
 

 The trial court granted Defendants' summary judgment motion, determining that Defendants are entitled to have that portion of the private road upon which Plaintiffs constructed their gates to remain open and to require Plaintiffs to remove the gates. We conclude that Defendants were not entitled to summary judgment for the reasons stated below.
 

 There is nothing on the 2000 Map or other documents in the chain of title which suggests that the parties intended that the private road comprising the 2000 Easement
 
 *674
 
 had to remain "open." Therefore, we conclude that Plaintiffs "may erect gates across [the 2000 Easement] when necessary to the reasonable enjoyment of [their] estate, provided they are not of such nature as to materially impair or unreasonably interfere" with the purpose of the easement to Defendants' tract.
 
 Chesson
 
 ,
 
 224 N.C. at 293
 
 ,
 
 29 S.E.2d at
 
 909 ;
 
 see
 

 Runyon v. Paley
 
 ,
 
 331 N.C. 293
 
 , 305,
 
 416 S.E.2d 177
 
 , 186 (1992) (holding that the meaning of unambiguous language contained in an easement is a question of law). Whether the gates, if erected on the 2000 Easement, would actually materially impair or unreasonably interfere with Defendants' right of egress and ingress is not an issue before us.
 

 We conclude further that Plaintiffs are, nonetheless, bound by the language contained in the 1989 Map with respect to the private road constituting the 1989 Easement: Plaintiffs must keep this easement "open."
 
 See
 

 Setzer
 
 ,
 
 286 N.C. at 539
 
 ,
 
 212 S.E.2d at 157
 
 . As such, we conclude that Plaintiffs are not allowed to install gates along the 1989 Easement. We further conclude that Defendants, as the owners of Tract 4, have the right to enforce this restriction.
 

 We note that there is some discrepancy as to exactly whether some part of the 2000 Easement is actually part of the 1989 Easement as well. If so, that portion would be bound by the "open" requirement. Indeed, there is some discrepancy between the 1989 Map and the 1996 Map as to the exact location of the 1989 Easement.
 

 In any event, the record shows that Plaintiffs' tracts, Tracts 1 and 3, contain portions of
 
 both
 
 the 1989 Easement and the 2000 Easement over which Defendants are allowed to travel to access Roney Lineberry Road
 
 *672
 
 from Tract 4. And though Plaintiffs assert in their brief on appeal that the gates are on the 2000 Easement (and
 
 not
 
 the 1989 Easement), there is nothing in the record before us that either party points to which indicates upon
 
 which
 
 easement the gates are actually located. To be entitled to summary judgment, it was Defendants' burden to establish conclusively that the gates were on the 1989 Easement. Since Defendants have failed in meeting this burden, Defendants were not entitled to summary judgment.
 

 Similarly, Plaintiffs are not entitled to summary judgment, as they failed to meet their burden of proving as a matter of law that their gates are on the 2000 Easement, and not on the 1989 Easement, and that the gates do not actually impair or otherwise unreasonably interfere with Defendants' use of that easement.
 

 We, therefore, reverse the trial court's grant of summary judgment and remand this matter for further proceedings not inconsistent with this opinion.
 

 REVERSED.
 

 Judges INMAN and COLLINS concur.
 

 [1]
 

 The 2000 Map did not create Tracts 5 and 6 as two separate tracts, but as one tract. The subdivision of Tracts 5 and 6 occurred later, but that subdivision is not relevant to this present matter.