An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-671

Filed 17 September 2025

Caldwell County, No. 22CVS000455

HIBRITEN MOUNTAIN, LLC, Plaintiff,

v.

JOHN W. DIGGS and ELIZABETH C. DIGGS, Defendants.

Appeal by defendants from summary judgment entered 17 April 2024 by Judge Daniel A. Kuehnert in Caldwell County Superior Court. Heard in the Court of Appeals 11 February 2025.

> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones and Jarrod B. Summey, for defendants-appellants.*

> *Starnes, Aycock, Haire, Hogan, Saunders & Rigsbee, PLLC, by James B. Hogan and Cannon Law Firm, P.A., by Bruce L. Cannon, for plaintiff-appellee.*

GORE, Judge.

Defendants John and Elizabeth Diggs appeal the trial court's summary judgment in favor of plaintiffs and denial of defendants' motion for summary judgment. Upon review of the briefs and the record, we affirm in part, vacate in part, and remand for further proceedings.

**I.**

Plaintiff is the owner of a dominant tract of land that is part of Hibriten Mountain. Plaintiff is also the successor in interest to an easement. Defendants' property is subject to the reservation of easement that is the subject of this appeal. Plaintiff filed a complaint against defendants when defendants began constructing a gate on defendants' portion of property that crosses over a portion of the easement. The parties filed cross motions for summary judgment.

The trial court ultimately granted summary judgment to plaintiff and denied defendants' motion for summary judgment after first reciting these undisputed facts:

> 1. Hibriten Mountain is a well-known landmark which can be seen for many miles and from multiple counties in western NC. It is largely privately owned, and has a long and locally significant history in Caldwell County.
>
> 2. Access to this landmark is via a state road known as Hibriten Mountain Road or S.R. 1714.
>
> 3. This public road, S.R. 1714, terminates at the base of the mountain which is also the beginning point of a private road up to the top of the mountain. It is this private road which is the subject of this litigation.
>
> 4. Further, the eastern half of the private road in question was previously located across property owned by the plaintiff's family's predecessors in title until a portion of the lower section of the mountain property was transferred by deed, decades ago, with the grantor retaining a written recorded 50' wide easement to serve the remainder of the property including plaintiff's current holdings at the top of the mountain. Over time, portions of this lower "out conveyance" tract was purchased by the defendants. Also, portions of the plaintiff's upper remainder tract had been and still are leased including public and private utility companies/entities.
>
> 5. The [defendants] purchased the property that included a home which is accessed by using approximately the first 230 to 240 feet of the private

50' wide mountain road until it branches off to the right leading to [defendants'] home. [Defendants'] private driveway runs from the terminus of the public road, along the private road, and then forks to the right away from the easement/private road in question until reaching their home. The private road is paved from the terminus of the public road to where it forks off to [defendants'] home. The private road is gravel and dirt beyond where the road forks off to [defendants'] home.

6. Many years ago, with the apparent permission of [plaintiff's] predecessor in title, the Forest Service placed a gate across the Hibriten Mountain Road, about 600' up the road from its terminus of SR 1714, and said Forest Service gate is about 400' beyond the point where [defendants] driveway branches off to their home and at a point below and yet fairly near [defendants'] home.

7. The private road is used not only by defendants and by tenants of [plaintiff] including the State Forest Services for permitted and legitimate purposes to reach the top of the mountain to access the upper tract generally and often to reach satellite dishes and the like necessary to maintain public utility service throughout a large portion of western NC.

    a. The Problem is: a large number of uninvited members of the public continually use this dirt mountain road by:
        i.    Driving up,
        ii.   Hik[ing] up,
        iii.  Using four-wheelers on,
        iv.  Riding horseback upon this road.
    b. Further cars and motor vehicles are often parked along the road because they can't get pas[t] the fire service gate. This has resulted in trespassers at all hours at and near [defendants'] home. The road being clogged with park[ed] vehicles. Trash has been left on [defendants'] property, and [defendants'] personal property has been damaged. All of the above is well documented and uncontradicted.

8. This public use of this private road had become such a significant [annoyance] for [defendants] . . . that they decided to build and began to build a gate at the beginning point of the private road (which is the terminus of SR 1714) to restrict the uninvited public from travelling the road and as a means to control the resulting[ annoyance]. . . . The gate

itself was not completed as construction was stopped due to this litigation.

9. The roadbed of the private section of the Hibriten Mountain Road runs along the western sides of all three tracts owned by [defendants]. [Plaintiff's] right of way, . . . also runs along the western side of all three of [defendants'] tracts.

10. The width of [plaintiff's] right of way runs, for the most part, from the centerline of the actual roadbed of Hibriten Mountain Road and runs into [defendants'] properties and not across the entire used part of the roadbed.

This Court is not bound by the recitation of facts included in the trial court's summary judgment. However, we include a portion of the findings because they are a succinct overview that aptly articulates the location of the easement and the dispute it raises between plaintiff and defendants according to the record. Defendants timely appealed the summary judgment and filed a voluntary dismissal without prejudice of their remaining claims. Defendants also moved for a stay of the permanent injunction requiring removal of the constructed post that was granted via summary judgment. The trial court granted the motion and stayed the order until after appeal. Having noticed a voluntary dismissal of the remaining claims, the summary judgment became a final order and defendants appeal of right pursuant to N.C.G.S. § 7A-27(b)(1).

## II.

Defendants appeal the trial court's determination to grant summary judgment in favor of plaintiff and deny defendants' motion for summary judgment. Specifically,

defendants argue the trial court erred by determining the intent within the reserved easement was for it to remain open because the easement deed does not plainly state nor demonstrate an intent by its terms to remain open. We agree.

We review a trial court's summary judgment de novo. *In re Will of Jones*, 362 N.C. 569, 573 (2008). "[S]ummary judgment is strong medicine and should be used with caution, . . . reserving it for cases where only questions of law are involved and a fatal weakness in the claim of a party is exposed." *Estate of Graham v. Lambert*, 385 N.C. 644, 650–51 (2024) (internal quotation marks and citations omitted).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact.

*Forbis v. Neal*, 361 N.C. 519, 524–25 (2007) (cleaned up).

At issue is the reservation of an easement in the chain of title. Plaintiff obtained a preliminary injunction and was granted a permanent injunction at summary judgment to prevent defendants from completing a gate over a portion of the easement that runs over the western portion of defendants' property.[1] Neither party contests the existence or location of the easement in this appeal. What was determined at summary judgment and is before us is the question—whether the

---

[1] The gate defendants began building was partly on their property and partly on their neighbors' property. This is not before us on appeal and according to the record the neighbors agreed to the building of the gate on their portion of property.

language in the easement requires the ingress and egress to remain open. After reviewing the record and the parties' briefs, we determine the trial court erred as a matter of law.

We must look at the words in the easement to determine whether a servient estate holder may erect a gate over the easement. If an easement includes express language for the easement to remain open, or if the language in the easement "appears from the terms of the grant or the circumstance that such was the intention," the servient estate holder may not erect any barrier across the easement. *Taylor v. Hiatt*, 265 N.C. App. 665, 670 (2019) (citation omitted). In the absence of such express language or express intent, the servient estate "may erect gates across the way when (1) necessary to the reasonable enjoyment of his estate, (2) provided they [do not] . . . materially impair or unreasonably interfere with the use of the lane as a private way for the purposes for which it has theretofore been used." *Taylor v. Hiatt*, 279 N.C. App. 506, 508 (2021) (internal quotation marks and citations omitted).

In the present case, both parties agree the easement does not expressly state that the easement shall remain open. Plaintiff argues the language in the easement unambiguously states that the intention of the parties to the original easement was for the easement to remain open. In support, plaintiff relies on case law that states the rules of contract interpretation dictate what the parties are bound to in an easement deed. *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719–20 (1962). We agree that an easement deed is in essence a contract and the rules of

contract interpretation apply. *Id.* When an easement deed includes language that "is clear and unambiguous, effect must be given to its terms, and [we], under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit." *Id.* at 719. Ambiguity exists when the court must consider extrinsic evidence or "consideration of disputed fact" to apprehend the intentions of the parties to the contract. *Lane v. Scarborough*, 284 N.C. 407, 410 (1973). If "the terms of the grant or circumstances" demonstrate the intention of the parties, then it is within the purview of the courts to determine such intention as a matter of law. *Setzer v. Annas*, 286 N.C. 534, 539 (1975); *Runyon v. Paley*, 331 N.C. 293, 305 (1992).

Applying these laws to the present case, we consider the easement deed and determine whether "the terms of the grant or circumstances" demonstrate the intention was for the easement to remain open. *Setzer*, 286 N.C. at 534. The easement states as follows:

> RESERVATION OF EASEMENT: Grantors reserve unto themselves, their heirs, devisees, personal representatives and assigns, a perpetual and appurtenant easement for ingress and egress from the Hibriten Mountain Road, SR No. 1714, to a tract of land owned by the Grantors which adjoins and lies generally east of the property herein conveyed to the Grantee. Grantors, their heirs, devisees, personal representatives and assigns reserve the right to construct, maintain and improve a road upon the easement, to construct and maintain slopes necessary to meet state and local requirements for major collector streets, and to dedicate the said road to public or private use for the use and benefit of subsequent owners of the dominant tract, or of any portion of the dominant tract, now owned by Grantors, and if dedicated to public use, it may be acquired and maintained by either the North Carolina Department of Transportation or the City of Lenoir, or their successors, and added to the public roads system. In addition, Grantors, their heirs,

devisees, personal representatives and assigns, reserve the right to grant further easements and rights-of-way upon the reserved easement to any public entity, agency or public or private utility for the installation and maintenance of public or private utilities, including but not limited to, water, sewer, electricity, natural gas, telephone, cable television and internet access.

The reserved easement shall be at all points a minimum of fifty feet (50') in width, together with such additional width as may be required to construct a major collector street to N.C. State Department of Transportation subdivision specifications as the same may be amended from time to time, and shall run along the western boundary of the property herein conveyed to Grantee-adjacent to and generally east of the following line . . . .

Plaintiff's argument is centered around the broad reservation it retains in the easement and potential for future use of the easement through these reservations. However, according to the undisputed facts in the record, the easement has not been dedicated to public use, plaintiff has not granted further easements to public or private utilities, nor has it constructed or maintained slopes for major collector streets. Such potential for expansive use does not imply the servient estate's limitation to keep the easement open and prevent the servient estate from reasonable enjoyment of their property.

We determine as a matter of law that the easement's broad reservations for future development and use are not terms of intention for the easement to remain open in its current state. Should plaintiff convey, construct, or grant any of the reservations available in the easement in the future, this could impact defendants' ability to maintain a gate over the easement. However, in the present, it is enough

to say there is no limitation within the easement deed for the easement to remain open based upon our de novo review of the terms.

Because we determine the easement deed does not include terms mandating the easement remain open, we now consider whether the trial court erred by denying defendants' motion for summary judgment to erect a gate over the easement. Plaintiff argues whether defendants may erect a gate across the easement is a genuine issue of material fact. We agree.

As previously stated, the general rule is that a servient estate "may erect gates across [an easement] when (1) necessary to the reasonable enjoyment of his estate, (2) provided they are not of such nature as to materially impair or unreasonably interfere" with the dominant estate's use of the easement. *Taylor*, 279 N.C. App. at 508. Whether the gate is necessary for the reasonable enjoyment of defendants' estate and whether the gate will materially impair or unreasonably interfere with plaintiff's use of the easement are genuine issues of material fact that are properly resolved by the trier of fact. *See Chesson v. Jordan*, 224 N.C. 289, 293 (1944); *Taylor*, 279 N.C. App. at 509–10. Accordingly, we remand to the trial court for it to conduct further proceedings not inconsistent with this opinion.

**III.**

For the foregoing reasons, we vacate summary judgment in favor of plaintiff, and we vacate in part the denial of defendants' motion because we determine the easement as written does not express intent to remain open. We affirm in part the

denial of defendant's motion because genuine issues of material fact exist as to whether defendants may erect a gate. Therefore, we remand for further proceedings not inconsistent with this opinion.


AFFIRMED IN PART, VACATED IN PART AND REMANDED.

Judges WOOD and STADING concur.

Report per Rule 30(e).