Mary Annette, LLC v. Crider, 2025 NCBC 23.

STATE OF NORTH CAROLINA

HAYWOOD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21CVS001224-430

MARY ANNETTE, LLC; JORGE
CURE; DANA CURE; TWILIGHT
DEVELOPMENTS, INC.; OZZIE 1,
LLC; MICHAEL WASHBURN; and
CHRISTINE SHEFFIELD,

          Plaintiffs,

v.

TERRI LYNN CRIDER and
MOUNTAIN GIRL VENTURES,
LLC,

          Defendants.

**FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND JUDGMENT FOLLOWING
1 MAY 2025 BENCH TRIAL
[CORRECTED]**

1. On 1 May 2025, the Court commenced a two-day bench trial limited to the quiet title counterclaim asserted by Defendants Terri Crider and Mountain Girl Ventures, LLC.[1] Having considered all relevant evidence, the Court enters judgment in favor of Defendants on this counterclaim based on the following findings of fact and conclusions of law.

> *McLean Law Firm, P.A., by Russell Lyway McLean, for Plaintiffs Mary Annette, LLC, Jorge Cure, Dana Cure, Twilight Developments, Inc., Ozzie 1, LLC, Michael Washburn, and Christine Sheffield.*
>
> *Smathers & Smathers, by Patrick U. Smathers, for Defendants Terri Lynn Crider and Mountain Girl Ventures, LLC.*

Conrad, Judge.

---

[1] A jury trial on all remaining claims and counterclaims is scheduled to occur in July 2025. (*See* ECF No. 138.)

# I.
# BACKGROUND

2.      Around fifteen years ago, Terri Crider and her siblings inherited a piece of real property in Maggie Valley, North Carolina.  The land included a family home, as well as several cabins and recreational vehicle sites available for rent to vacationers.  At some point, Terri acquired one sibling's interest so that, as of 2020, only she and her brother Joey co-owned the property.  Terri held a two-thirds interest; Joey held the other third.  But their strained relationship made shared ownership untenable.

3.      Eventually, it became clear that Joey was willing to sell his interest for the right price.  Terri turned to her friend, Jorge Cure, for advice.  Jorge suggested that he and one or more other investors could help Terri buy Joey's interest and then develop part of the property as a Planned Unit Development.  The idea was to convert the existing cabins and recreational vehicle sites into individual units for sale and to create a common area to be owned by a property owners' association.  Terri, Jorge, and the other investors would split the income from the unit sales.

4.      Soon after, Terri and Jorge began putting this plan in motion.  Jorge's wife, Dana, joined the project, as did Michael Washburn and Christine Sheffield.  Together, the five individuals formed Mary Annette, LLC ("Mary Annette") to handle the development. The company's operating agreement names three members—Mountain Girl Ventures, Twilight Developments, Inc., and Ozzie 1, LLC—and states that each has a one-third membership interest.  Terri owns Mountain Girl Ventures; Jorge and Dana own Twilight Developments; and Michael and Christine own Ozzie 1.  (*See* Pls.'

Ex. 1.)  Once formed, Mary Annette entered into a contract with Joey to buy his interest, with closing to occur upon completion of due diligence.  (Pls.' Ex. 3.)

5.     The Planned Unit Development required approval from local authorities. With the assistance of attorney Jack Kersten, Terri and Mary Annette jointly applied to the Town of Maggie Valley's Zoning Board of Adjustment for approval.  The application form identifies Terri as "2/3 owner of property" and Mary Annette as "contract purchaser of 1/3 property."  Together, they asked the Zoning Board to approve a proposal to divide the property into thirty-four lots and to assign thirty of the lots to the Planned Unit Development (one common area, twelve recreational vehicle sites, and seventeen cabins).  The Zoning Board approved the application in January 2021. (Defs.' Ex. 10.)

6.     Around this time, Terri approached Kevin Ensley to survey the property. Ensley did so and prepared a plat consistent with the proposal submitted to the Zoning Board.  The final plat divides the property into thirty-four lots.  There are five larger tracts denominated as C-1 through C-5.  Under the oval labeled "C-4" are the words "2.062 Ac. Common Area."  There are twelve lots denominated as "R/V Units" (numbered 1 through 12) and another seventeen denominated as "Cabin Units" (numbered 111 through 122, 126 through 129, and 134).  All thirty-four lots have boundaries marked by bold lines, and the acreage of each "R/V Unit" and "Cabin Unit" appears in text to the left of the drawing.  Ensley completed the plat in February 2021, and the Zoning Board approved it that March.  (Defs.' Ex. 8.)

7.     The closing for the acquisition of Joey's interest took place on 1 April 2021. At closing, Terri signed a deed conveying to Mary Annette her "two thirds (2/3) undivided interest in and of Tracts C-1, C-2, C-3, C-4 and C-5 as they appear on that certain plat of survey titled, 'Final Plat for Smoky View Cottages and RV Resort' by L. Kevin Ensley P.L.S. dated 2/2/21 drawing no. B-004-21, recorded in Plat Cabinet D, Slot 1234 Haywood County Registry." Likewise, Joey signed a deed conveying to Mary Annette his "one third (1/3) undivided interest in and of Tracts C-1, C-2, C-3, C-4 and C-5 as they appear on" the plat. Mary Annette then conveyed the entirety of tracts C-3 and C-5 to Terri and executed a deed of trust on tracts C-1, C-2, and C-4 to secure a loan (with C-1 and C-2 to return to Terri upon repayment of the loan). (Defs.' Exs. 2, 3.)

8.     Following the closing, the parties' relationship deteriorated due to disputes about Mary Annette's management and operations and disputes over ownership of the individual units. In November 2021, Mary Annette sued Terri for conversion of its records and rental income. This triggered a flurry of filings that brought in additional parties and a host of additional claims and counterclaims. The Court later realigned the parties: on one side, Terri and Mountain Girl Ventures are Defendants; on the other side, Jorge, Dana, Michael, Christine, Twilight Developments, Ozzie 1, and Mary Annette are Plaintiffs.

9.     Of the various claims, the only one at issue here is the counterclaim asserted by Terri and Mountain Girl Ventures for a declaratory judgment and to quiet title. In that claim, they ask the Court to declare that Terri owns a two-thirds interest in

the cabins and recreational vehicle sites that make up the individual units in the Planned Unit Development.

## II.
## CONCLUSIONS OF LAW

10. "An action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims." N.C.G.S. § 41-10. "The beneficial purpose of this section is to free the land of the cloud resting upon it and make its title clear and indisputable, so that it may enter the channels of commerce and trade unfettered and without the handicap of suspicion." *Heath v. Turner*, 309 N.C. 483, 488 (1983); *see also* N.C.G.S. § 1-254 ("Any person interested under a deed . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder.").

11. This dispute concerns the ownership of the individual units within the parties' Planned Unit Development. At the April 2021 closing, Terri conveyed by deed her "two thirds (2/3) undivided interest in and of Tract[] . . . C-4" to Mary Annette. Terri contends that this language includes her interest in the Planned Unit Development's common area but excludes her interest in the individual units. Mary Annette, by contrast, maintains that it received Terri's interest in all the individual units as well as the common area.

12. When a deed is unambiguous, its interpretation is a question of law, *see Runyon v. Paley*, 331 N.C. 293, 305 (1992), and the Court must decide that question without considering evidence outside the deed, *see Simmons v. Waddell*, 241 N.C.

App. 512, 524 (2015). But when "the language is ambiguous so that the effect of the instrument must be determined by resort to extrinsic evidence that raises a dispute as to the parties' intention, the question of the parties' intention becomes one of fact." *Runyon*, 331 N.C. at 305. In earlier rulings, the Court determined that the deed from Terri to Mary Annette is ambiguous and that a genuine issue of material fact exists as to the parties' intent. *See Mary Annette, LLC v. Crider*, 2024 NCBC LEXIS 158, at *22–24 (N.C. Super. Ct. Dec. 13, 2024) (denying Plaintiffs' motion for summary judgment); *Mary Annette, LLC v. Crider*, 2023 NCBC LEXIS 126, at *4–10 (N.C. Super. Ct. Oct. 11, 2023) (denying Defendants' motion for summary judgment).

13. Unlike most issues of fact, this one falls to the Court, not the jury, to decide. *See Runyon*, 331 N.C. at 305; *see also Bank of Am., N.A. v. Schmitt*, 263 N.C. App. 19, 22 (2018) (stressing "the traditional rule that it is the judge's role to determine the intent of the parties in order to interpret the language in a deed"). To determine the parties' intent, the Court "must look to the language of the instrument" in light of "the situation of the parties" and "the circumstances surrounding their transaction." *Runyon*, 331 N.C. at 305. The parties may not vary or add to the deed through their testimony. *See id.* at 313.

14. Having carefully considered the trial evidence,[2] the Court concludes that Terri did not convey her two-thirds interest in the individual units to Mary Annette.

---

[2] At trial, the Court reserved ruling on Defendants' objections to Plaintiffs' exhibits 9 and 10 on relevance grounds. Having considered these matters, the Court sustains the objections. The exhibits postdate the April 2021 closing and shed no light on the parties' intention, the situation of the parties, or the circumstances surrounding their transaction. The exhibits are irrelevant and inadmissible. The Court also reserved ruling on Plaintiffs' objection to the expert testimony of Wilder Wadford. Having considered this matter as well, the Court

15. The deed's text supports this conclusion. It states that Mary Annette was to receive Terri's interest in tract C-4 as it "appear[s] on" the plat prepared by Ensley, (Defs.' Ex. 3). *See Collins v. Land Co.*, 128 N.C. 563, 565 (1901) (observing that "a map or plat, referred to in a deed, becomes a part of the deed, as if it were written therein"). Looking to the plat, the label "2.062 Ac. Common Area" appears directly under "C-4." This suggests that tract C-4 and the common area are one and the same. Moreover, although the individual units lie within the perimeter of tract C-4, the plat depicts them as separate, standalone parcels. Each unit's boundaries are marked by the same type of bold line used to mark the perimeters of tracts C-1 through C-5, and the text adjacent to the map lists the acreage of each unit individually by unit number. Thus, the deed's reference to tract C-4 and its omission of any reference to the individual unit numbers strongly signal an intent to convey Terri's two-thirds interest in the common area but not the individual units.

16. The circumstances surrounding the transaction lend additional support. There is no dispute that the parties intended to create a Planned Unit Development with individual units to be sold to third parties and a common area to be owned by a property owners' association. Nor is there any dispute that the parties sought approval from Maggie Valley's Zoning Board to divide the property into thirty-four lots: one lot for the common area, twenty-nine lots for the individual units comprising the cabins and recreational vehicle sites, and four lots that would not be part of the

---

sustains the objection and excludes Wadford's testimony, which concerned his understanding of North Carolina law. *See Smith v. Childs*, 112 N.C. App. 672, 681 (1993) (concluding that expert's "individual interpretation of North Carolina law" was inadmissible).

Planned Unit Development. Ensley was asked to survey the property and draw the plat to effectuate that proposed division. This evidence strengthens the conclusions that tract C-4 comprises only the common area and that the twenty-nine individual units are separate and distinct parcels (with C-1, C-2, C-3, and C-5 as the remaining lots outside the Planned Unit Development).

17. Plaintiffs have offered no persuasive basis to read the deed's reference to tract C-4 to include the individual units. Their testimony chiefly concerned their own subjective views of the transaction and the parties' intent. Even though there was no objection to this testimony, the Court doubts whether it is material. *See Runyon*, 331 N.C. at 313 (discounting testimony concerning subjective intent because it "reference[d] no matters of public record that tend to explain ambiguous deed language by showing the parties' situation or the circumstances surrounding their transaction"). In any event, the testimony was conflicting, and some of the Plaintiffs conceded that they were unfamiliar with the plat and expressed uncertainty about the terms of the transaction. To the extent Plaintiffs testified that the parties intended the transaction to include not only Terri's interest in tract C-4 but also the individual units, their testimony cannot add to or vary the deed's terms.

18. In sum, the weight of the evidence favors Defendants. The deed's language, the parties' situation, and the circumstances surrounding their transaction all strongly support the conclusion that "Tract ... C-4" means the Planned Unit Development's common area and excludes the individual units.

19. To be clear, the claim at issue concerns only the deed between Terri and Mary Annette. It does not concern the deed from Joey to Mary Annette. Joey is not a party in this case, and the Court makes no findings, conclusions, or declarations as to his interest in the property, if any.

III.
CONCLUSION

20. Based on these findings of fact and conclusions of law, the Court **ENTERS JUDGMENT** in favor of Defendants on their counterclaim for a declaratory judgment and to quiet title. The Court **DECLARES** that Terri Lynn Crider owns a two-thirds interest in the individual units denominated as "R/V Units" 1 through 12 and "Cabin Units" 111 through 122, 126 through 129, and 134 as they appear on the survey entitled "Final Plat for Smoky View Cottages & RV Resort" by L. Kevin Ensley P.L.S., dated 2 February 2021, drawing no. B-004-21, recorded in Plat Cabinet D, Slot 1234, Haywood County Registry.

**SO ORDERED**, this the 13th day of May, 2025.

       /s/ Adam M. Conrad
       Adam M. Conrad
       Special Superior Court Judge
       for Complex Business Cases